## CITY OF JORDAN v. JOSEPH BESPALEC.[1]

June 13, 1902.

Nos. 13,082—(188).

**Intoxicating Liquor—License to Sell.**

> Under a city ordinance which provided for the issuance of a license to sell intoxicating liquors upon a vote of the council, to be signed by the mayor and countersigned by the city clerk, it is incumbent upon the applicant for such license to obtain such instrument executed in form by the above-named officers. That he had paid the license fee, that the city council had approved his bond and voted him a license, is not equivalent to the actual issuance of a formal license to him, and these facts afford him no defense for selling without such license.

Defendant having been convicted before a justice of the peace on the charge of selling intoxicating liquor at the city of Jordan without a license, in violation of the city ordinance, appealed to the district court for Scott county upon questions of law and fact. The case was tried before Cadwell, J., and a jury, which rendered a verdict of guilty, as charged. Upon defendant's request the court thereupon certified to the supreme court for its decision the questions set out in the opinion. Remanded, with instructions.

*F. J. Leonard,* for plaintiff.

*W. C. Odell* and *F. C. Irwin,* for defendant.

COLLINS, J.

In a case certified up to this court under the provisions of G.

[1] Reported in 90 N. W. 1052.

S. 1894, § 7395, the question, concisely stated, is, can an applicant for a license to sell liquor in the city of Jordan make sales after he has complied with all of the conditions of its ordinance, has paid the required amount of license fee, his bond has been approved by the city council, and it has directed that a license be issued to him, but before a license in form has been signed by the mayor, countersigned by the clerk, and delivered to such applicant?

. The city council is vested by its charter (Sp. Laws 1891, c. 4, subc. 4) with the power to regulate by ordinance persons dealing in intoxicating liquors within the city. An ordinance passed in pursuance of this authority prohibited a sale within the city unless the vendor should have first obtained a license to sell from the city council as "hereinafter provided." By section 3 a proposed vendor is to first make application in writing to the council, specifying the place, house, or room in which he proposes to conduct his business. Notice by publication is then given of the time when the petition will be heard, and, if allowed, "a license signed by the mayor of said city and countersigned by the clerk of said city, shall be issued to said applicant, authorizing him or them to sell or deal in spirituous, vinous, fermented, mixed or intoxicating liquors at that one certain place, house or room in said city designated in said application, in the manner therein prescribed for the period of one year, which said license shall not be assignable or transferable, and shall be posted up in the room where such business is done, and shall distinctly state the amount paid therefor." During the continuance of the license the licensee must carry on his business in the house, place, or room specified in his application. It is also provided that the license shall not be granted or issued until the license fee has been paid, and the bond approved by the council.

Clearly, the council had power to vote or grant the license, but the mayor and the clerk were to issue it; the former to sign, and the latter to countersign. Although the application has been received, the fee paid, the bond approved, and the license voted by the council, no person has obtained a license to sell until there has been issued to him a written or printed instrument in due form, and duly executed by the mayor and clerk. It is this instrument,

and not action by the council, which constitutes the license. This is evident when we find that in the license the place, house, or room in which sales are to be made must be named and described, and that the document must be posted up in the room where the business is done. How can the place be named, or a description thereof be given, or the license posted up, unless there is a formal document, signed and issued in accordance with the ordinance? A cursory examination of the ordinance and a moment's reflection upon the absolute necessity of a regular and orderly procedure in all city affairs will convince any one that until the formal document has been signed and issued no license has been obtained.

This view accords with State v. Bach, 36 Minn. 234, 30 N. W. 764, in which we find the statement that it was not enough for the petitioner to execute a bond and to offer to pay the license fee, but that he had no right to sell until he received his license. Also with what was said in State v. Board of Commrs. of Carver Co., 60 Minn. 510, 62 N. W. 1135, that the license is authority to sell "only from the date it is actually issued." Surely, the court then had no doubt about the necessity of an actual visible license.

The views of a leading text writer are thus expressed: "It is generally held that the performance by an applicant for a license of the conditions which the statute imposes as prerequisite to the grant of the privilege is not equivalent to an actual issuing of a license to him. His right is not complete until the license itself is in his hands." And again: "The fact that the authorities charged with the duty of issuing liquor licenses wrongfully or arbitrarily refused to grant a license to the applicant is not equivalent to a proper license, and affords him no justification or defense for engaging in the traffic without a license. He has his remedy by mandamus, and this remedy he must successfully pursue before he can legally begin selling." Black, Intox. Liq. §§ 119, 121.

But as Mr. Black remarks, there is one decision—Prather v. People, 85 Ill. 36—which appears inconsistent with the general current of cases, in which it was held that a person who had strictly complied with the local laws, had paid his money, and been voted a license by the authorities, would be protected in selling,

although the village clerk had neglected·to give him a license in form. As the logical result of this decision, the Illinois court of appeals held in Zanone v. City, 11 Ill. App. 334, that, if the applicant had complied with all requirements of the law, but the authorities had failed to act on his application, he could not be prosecuted for selling without a license. We cannot subscribe to the lawless doctrine found in these cases. We are of opinion that under this ordinance it was absolutely necessary for the applicant to obtain a written or printed license, duly signed by the mayor and countersigned by the clerk, before he could sell; and, as he sold without this formal authority, he was guilty of a violation of the ordinance. The authorities in support of this conclusion, if any are needed, are collected in 11 Am. & Eng. Enc. (1st Ed.) 637. See also Keiser v. State, 78 Ind. 430, in which many cases are referred to.

Cause remanded, with instructions to proceed in accordance with the views herein expressed.