## HUBERT PARON AND OTHERS v. CITY OF SHAKOPEE AND OTHERS.[1]

May 7, 1948..

No. 34,630.

---

[1]Reported in 32 N. W. (2d) 603.

*Leonard, Street & Deinard,* for appellants.

*Moonan, Sturner, Heinen & Lindmeyer* and *Julius A. Coller II,* City Attorney, for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order sustaining demurrers to plaintiffs' complaint.

The four plaintiffs, residents of Shakopee, a city of the fourth class in this state, brought this action against defendants city of

Shakopee, a municipal corporation, its common council, mayor, city recorder, city attorney, and five holders of "on sale" liquor licenses in the city of Shakopee. For brevity, we shall refer to the parties as the four plaintiffs, the city, the council, the mayor, the city recorder, the city attorney, and the five defendants. The action was brought under the declaratory judgments act.

Prior to July 1, 1947, the four plaintiffs and the five defendants operated places in Shakopee where intoxicating liquor was sold under "on sale" licenses issued to them by the council. According to the complaint, in April and May 1947, the four plaintiffs filed applications for renewal of, and in May and June 1947 the five defendants filed applications for, "on sale" licenses for the license year commencing July 1, 1947. Thereafter, the city recorder gave notice of the filing of the nine applications for "on sale" licenses by publication in the official newspaper of the city, setting out that the applications would be heard and determined by the council on June 10, 1947. The complaint further alleged that at the times the five defendants filed their applications—

"none of said defendants was, or has been since, or now is qualified to apply for or to receive such license for said premises, or to operate 'on sale' liquor stores therein. At said times, none of said establishments so owned and operated by said five defendants constituted or has since constituted, or now constitutes a hotel or a club, or an exclusive liquor store, within the definitions of the Act or of the Ordinance."

On June 10, 1947, the council, consisting of nine members, convened and adjourned to June 18, 1947, when it met again with the entire council and mayor present. A majority of the members of the council voted in the affirmative with respect to each of the nine applications. The meeting was then adjourned to June 23, 1947. On or about June 22, 1947, the city recorder sent to the liquor control commissioner of the state a "Certification of On Sale Liquor License," dated June 20, 1947, reporting that the council had taken the action stated above. The commissioner then informed the council that the number of "on sale" liquor licenses which could be

issued in Shakopee was limited to five because of its population (exclusive of bona fide clubs, not involved). The complaint states that the commissioner had previously given this same information to the council by letter dated May 29, 1947. Because of this notification, the entire council again convened on July 1, 1947, with the mayor present, and "met in adjourned regular session." It is alleged that the city attorney then erroneously advised the council that its action of June 18, 1947, granting the nine applications, could not be reconsidered, and, according to the complaint:

"The City Attorney further erroneously advised the aldermen that they should deliver certificates of license to the first five applicants whose applications had been purportedly granted, to-wit: said five defendants, and treat the remainder of said licenses then granted, to-wit: the licenses granted to plaintiffs, as void, and that they should instruct the Mayor to sign said certificates to said five defendants and the Recorder to issue the same, despite the fact that said five defendants were disqualified from receiving such licenses, or certificates therefor, as hereinbefore alleged.

"Thereupon defendant, J. C. Huber, moved that the Mayor be instructed to sign the five purported licenses to said five defendants, and that the Recorder be instructed to deliver the purported certificates immediately, and defendant, Lawrence Kreuser, moved that the application fees and policies filed by plaintiffs be returned to them. Said motion was seconded by defendant, Peter Rademacher, and was carried."

It is alleged that pursuant to the action of the council the mayor signed and the city recorder delivered purported certificates of "on sale" license to the five defendants for the license year commencing July 1, 1947, and ending June 30, 1948, and returned to the four plaintiffs the application fees and policies filed by them.

The relief sought under the declaratory judgments act is for a judicial declaration as to who, as between the four plaintiffs and the five defendants, are legally entitled to "on sale" liquor licenses in Shakopee for the license year commencing July 1, 1947, and ending June 30, 1948; including a declaration as to the duties of the

city, the council, the mayor, the city recorder, and the city attorney in the premises; also, a decree requiring the mayor to sign "on sale" license certificates and requiring the city recorder to deliver the certificates to plaintiffs and certify their issuance to the state liquor control commissioner upon its being declared that plaintiffs are entitled to them.

The various defendants demurred separately to the complaint on the grounds that the court had no jurisdiction of the persons of defendants or of the subject of the action; that plaintiffs had no legal capacity to sue; that there is a defect of parties plaintiff; that the facts stated in the complaint do not constitute a cause of action, and other grounds. If the demurrers can be sustained on any of the statutory grounds, they must be sustained. A demurrer admits all the material facts well pleaded in the pleadings to which it is directed, for the purpose of testing their sufficiency in law upon demurrer. It admits all necessary inferences or conclusions of law, whether stated or not, which follow from facts well pleaded. It does not admit bare conclusions of law or facts not well pleaded. 5 Dunnell, Dig. & Supp. § 7542. Meyers v. Lafayette Club, Inc. 197 Minn. 241, 266 N. W. 861, is authority for the proposition that a demurrer to a complaint based on the uniform declaratory judgments act is proper.

In our opinion, the problems raised by this appeal must be determined by a consideration of the following questions: (1) What was the status of the four plaintiffs at the time the present action was commenced? (2) Upon determination of their status, are they in a position to test the propriety of the council's action in directing that licenses be issued to the five defendants?

It is elementary that the legislature has the power to regulate the sale of intoxicating liquors. This power may be delegated to municipalities to license and regulate the sale of intoxicating liquors as an exercise of the ordinary police power of the state. The power to license involves the power to refuse to license, to limit the number of licenses to be granted, and to prohibit sales by persons not licensed. 3 Dunnell, Dig. & Supp. §§ 4912 and 4913.

The legislative act relating to intoxicating liquors and the control thereof, referred to in the complaint, is M. S. A. 340.07 to 340.40 and amendments, commonly known as the liquor control act and hereinafter referred to as "the act." The ordinance of Shakopee referred to in the complaint is ordinance No. 43, amended in certain particulars by ordinances Nos. 44, 77, and 81, which ordinance and amendments are hereinafter referred to as "the ordinance." The complaint further alleged that at all times herein the ordinance provided and now provides, in conformity with the act, as follows:

"Sec. I (h)—'Exclusive liquor store' as herein used shall be an establishment used exclusively for the sale of intoxicating liquor at retail, either on or off sale or both."

"Sec. II, Par. 1—No person shall directly or indirectly, upon any pretense or by any device, manufacture, import, sell, exchange, barter, dispose of or keep for sale, any intoxicating liquor without first having obtained a license therefor as hereinafter provided. Licenses shall be of two kinds: 'on sale' and 'off sale.' "

"Sec. II, Par. 2—'On sale' licenses shall be granted only to exclusive liquor stores, hotels and clubs and shall permit the consumption of liquor on the premises only. Not more than five such licenses shall be granted or be in existence at any one time."

"Sec. III, Subd. 1—Every person desiring a license for 'off sale' or 'on sale' shall file a verified application therefor in writing with the clerk of the municipality. * * * Applications for 'on sale' licenses shall be in such form and shall require such information as the Council shall determine."

M. S. A. 340.11 contains the important provisions of the act, including the authority of municipalities such as the city of Shakopee to issue intoxicating liquor licenses. Subd. 1 of this section makes the sale of intoxicating liquor without a license unlawful. Subd. 4 provides that "on sale" liquor licenses shall be granted "by the respective local governing bodies of the various political subdivisions of the state." Municipalities are required to report the facts concerning the issuance of "on sale" liquor licenses to the liquor control commissioner. Subd. 10 provides that "on sale" liquor licenses

"may be issued in cities of the fourth class, and other villages and boroughs for such sale of intoxicating liquor in hotels, clubs or exclusive liquor stores, which exclusive liquor stores the governing body of such municipalities may establish or permit to be established for dispensation of liquor either 'On sale' or 'Off sale,' or both." Section VI, par. 7, of the ordinance provides:

"No license shall be issued to any person not a citizen of the United States and who shall not be of good moral character and repute, nor to any person who shall hereafter be convicted of any wilful violation of any law of the United States or the State of Minnesota or of any local Ordinance with regard to the manufacture, sale, distribution or possession for sale or distribution of intoxicating liquor, nor to any person whose license under this Ordinance shall be revoked for any wilful violation of any such laws or Ordinances."

It is evident that the legislature intended to confer on municipalities and other local subdivisions of the state government extensive authority in granting or refusing to grant liquor licenses. Annotations, 12 A. L. R. 1435, 54 A. L. R. 1104, and 92 A. L. R. 400.

1. Considering first the question as to the status of the four plaintiffs at the time the present action was commenced, it is our opinion that after their "on sale" licenses expired on June 30, 1947, they were no longer licensees, but that they resumed the status of any other citizen of the city of Shakopee who might have applied for and did not receive an "on sale" license for the year commencing July 1, 1947. Their rights, so far as licenses were concerned, were no different from those enjoyed by the public generally. It must be conceded that in this state no one has an absolute right to engage in the business of selling intoxicating liquor. It is a privilege subject to the police power of the state that can be granted only by proper licensing authority. Giozza v. Tiernan, 148 U. S. 657, 13 S. Ct. 721, 37 L. ed. 599; 30 Am. Jur., Intoxicating Liquors, §§ 19, 20, 275. While it appears from the complaint that the four plaintiffs were applicants for "on sale" licenses commencing July 1, 1947, it also appears that such licenses were never issued to them. It was discre-

tionary with the council as to which applications they should approve for licenses.

"* * * No person can acquire a vested right to continue, when once licensed, in a business, trade, or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination * * * to such reasonable regulations and restrictions as the legislature may from time to time prescribe. [Citing cases.] Regulations so prescribed and conformed to by the citizen may be subsequently changed or modified by the legislature, whenever public interests require it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary." State v. Hovorka, 100 Minn. 249, 252, 110 N. W. 870, 871, 8 L.R.A. (N.S.) 1272, 10 Ann. Cas. 398; 30 Am. Jur., Intoxicating Liquors, § 19.

The above case was cited with approval by this court in the very recent case of Abeln v. City of Shakopee, 224 Minn. 262, 28 N. W. (2d) 642, where this court held that a license to sell nonintoxicating beer is not property in the sense that it cannot be revoked without notice or hearing under the police power of the state, for reasons stated in the law authorizing issuance of such license. The fact that the four plaintiffs here were licensed in years prior to the one here involved does not alter the situation. A prior expired license has fulfilled the purpose of its creation and is therefore of no further value or effect. Unless the statute entitles the licensee to a renewal upon compliance with certain conditions, such an expired license confers no rights upon the former licensee. There is nothing in the liquor laws of this state upon which the right to renewal can be premised.

In State ex rel. Interstate, etc., v. M.-St. P. M. A. Comm. 223 Minn. 175, 187, 25 N. W. (2d) 718, 726, this court said:

"* * * A license confers upon the licensee the right to engage in the licensed business only for the term specified in the license. A prior expired license is *functus officio* and confers no rights upon the

licensee named therein, except in certain cases where by statute it entitles him to a renewal upon compliance with specified conditions."

In that case, as here, the parties involved were applying for new licenses, and there was no claim of statutory renewal rights. The court further said (223 Minn. 187, 25 N. W. [2d] 726):

"* * * In such cases, their application for a license stands upon the same basis as if they never had been licensed. Matter of Tammaro v. Bruckman, 173 Misc. 958, 18 N. Y. S. (2d) 689. See, State ex rel. Rose Brothers L. & S. Co. Inc. v. Clousing, 198 Minn. 35, 268 N. W. 844; Diamond Glue Co. v. United States Glue Co. 187 U. S. 611, 23 S. Ct. 206, 47 L. ed. 328; 50 Am. Jur., Statutes, § 476."

It would appear plain from the above holdings that, inasmuch as none of the nine applicants (the four plaintiffs and the five defendants) had any vested right to an "on sale" license commencing July 1, 1947, all nine applicants were in the same position prior to the actual issuance and delivery of the licenses, commencing July 1, 1947, to the five defendants. None of them was entitled to sell intoxicating liquor in the city of Shakopee commencing July 1, 1947, unless new licenses were actually issued and delivered to the applicants, effective on that date. The fact that the council voted favorably on the applications of the four plaintiffs and the five defendants on June 18, 1947, did not result in the granting of licenses at that time. It was not until the council decided at the July 1 meeting to whom the licenses should be issued and the mayor and the city recorder actually signed and delivered the licenses to the five defendants that they became effective. In other words, it required more than mere voting on the applications by the council to complete the process necessary to grant any of the applicants a license. To complete the issuance of a license, it required the actual signing of the written or printed instrument in due form by the mayor and city recorder, with the licensee's name and other data inserted therein, and a delivery of the same to the licensee.

In City of Jordan v. Bespalec, 86 Minn. 441, 442, 90 N. W. 1052, 1053, this court said:

"* * * Although the application has been received, the fee paid, the bond approved, and the license voted by the council, no person has obtained a license to sell until there has been issued to him a written or printed instrument in due form, and duly executed by the mayor and clerk. It is this instrument, and not action by the council, which constitutes the license. This is evident when we find that in the license the place, house, or room in which sales are to be made must be named and described, and that the document must be posted up in the room where the business is done. How can the place be named, or a description thereof be given, or the license posted up, unless there is a formal document, signed and issued in accordance with the ordinance?"

The authority to authorize the issuance of the licenses to any of the applicants was a matter that called for the exercise of the judgment and discretion of the council. State ex rel. Howie v. Common Council, 94 Minn. 81, 101 N. W. 1063. Prior to the Howie case, this court said in State ex rel. Zeglin v. Board of Co. Commrs. 60 Minn. 510, 512, 62 N. W. 1135:

"Whether a license to sell intoxicating liquors shall be granted or refused rests in the discretion of the board of county commissioners, in the exercise of which they act judicially, and not ministerially, and therefore their action cannot be controlled or reviewed by mandamus."

In State ex rel. Miller v. Reiter, 140 Minn. 491, 493, 168 N. W. 714, 715, this court said:

"* * * The issuance of the license was a matter that called for the exercise of the council's judgment and discretion. * * * Their discretion cannot be controlled. It is not subject to review. Neither can the mayor or the court dictate as to the fulness of their investigation. Their responsibility as to such matters is to the people who elected them to office."

The law in other jurisdictions is substantially the same as in Minnesota. See, 37 Am. Jur., Municipal Corporations, § 69; 30 Am.

Jur., Intoxicating Liquors, § 124; 43 C. J., Municipal Corporations, § 311, *et seq.;* 33 C. J., Intoxicating Liquors, § 149.

One who is merely an applicant for a liquor license has no vested interest which the courts are able to protect. While State ex rel. Zien v. City of Duluth, 134 Minn. 355, 159 N. W. 792, Ann. Cas. 1918A, 683, seems to indicate that a city council may be compelled to consider an application for a license on its merits in a proper case, no decision of this court has been called to our attention which would justify a judicial order directing the council of any city as to the manner in which its discretion should be exercised or the result it should reach. To the contrary, our cases seem to hold that the courts are without power to control the decision of the governing agencies called upon to consider applications for liquor licenses. While the granting of liquor licenses is not a matter of right, but rests in the sound judgment and discretion of the council, it is elementary that in the exercise of its discretion the council must not act arbitrarily or capriciously. The subject of discretion of licensing authorities is well considered in 30 Am. Jur., Intoxicating Liquors, § 121, as follows:

"Ordinarily, the granting of a license is not a matter of right, but rests in the sound discretion of the body or official to whom the duty of issuing it is committed. Legislative power of a city council to license, regulate, and tax carries with it a wide discretion as to the persons and places to be licensed and the number of licenses to be granted, which discretion may be exercised in each case when an application is made, if the matter has not been regulated by a general ordinance. The governing authority which has such discretionary power may vest in such officers as it deems proper the power to pass upon applications for permission to carry on the business and to issue licenses for that purpose. The power to issue a license for the maintenance of a bar in a hotel, for instance, carries with it authority to determine whether an alleged hotel is really being conducted as such and to withhold the license, in the officer's discretion, if the place does not satisfy the requirements.

"But power of the officers in these respects is not unlimited; their rejection of an application must be made, not arbitrarily or capriciously, but in the exercise of a sound discretion. The intendment of the law is that the discretionary decision shall be the outcome of examination and consideration, in other words, that it shall constitute a discharge of official duty, and not a mere expression of personal will."

We conclude that at the time of the commencement of this action the status of each of the plaintiffs was merely that of any other citizen of the city of Shakopee who might have applied for a license commencing July 1, 1947, and who failed to get one. Under the authorities cited, the district court did not have the power to direct the mayor of Shakopee "to sign said 'on sale' licenses granted to plaintiffs for their said premises, and to cause the same to be delivered to plaintiffs and each of them." Neither could it, upon the facts as pleaded, order and command the "City Recorder of the City of Shakopee, to deliver said 'on sale' licenses to plaintiffs and each of them, and to certify them to the Liquor Control Commissioner of the State of Minnesota as provided by said Liquor Control Act." In order to grant this requested relief, the district court would be required to exercise a discretion which has been conferred specifically by the legislature upon the council of the municipality here concerned. This cannot be done.

2. In view of our holding as to the status of the four plaintiffs, we next consider whether or not they are in a position to test the propriety of the council's action in directing that licenses be issued to the five defendants. The complaint alleges that the five defendants to whom licenses were issued were not entitled to receive them. The prayer for relief calls for a judicial declaration to that effect. We consider the question whether plaintiffs are entitled to such a judgment.

Our examination of the authorities discloses one case in which an individual citizen was permitted to test the accuracy of a census upon which the application of a state liquor law was based. Semones v. Needles, 137 Iowa 177, 180, 114 N. W. 904, 905, 14 L.R.A. (N.S.)

1156, 15 Ann. Cas. 1012. Even in that case the general rule was stated to be that "where the right claimed to be in danger is not different from that enjoyed by the public generally, and the dangers which may be suffered are only those shared by the public, an action of injunction will not lie in favor of an individual."

In Nast v. Town of Eden, 89 Wis. 610, 611, 62 N. W. 409, where a resident taxpayer and elector of a town sought to enjoin the local officials from issuing liquor licenses, the court said:

"* * * Equity does not revise, control, or correct the action of municipal officers at the suit of a private person, 'except as incidental and subsidiary to the protection of some private right or the prevention of some private wrong, and then only when the case falls within some well-defined head of equity jurisprudence.' "

"* * * A citizen and taxpayer cannot, ordinarily, maintain such an action where it does not appear that he has any peculiar interest in the matter other than and different from that of other citizens and taxpayers, although he may maintain such an action if he shows that he would suffer special damage, as where the license would permit a sale of liquors on property adjacent to that owned by him." 30 Am. Jur., Intoxicating Liquors, § 127. See, 3 A. L. R. 1484.

"In some jurisdictions it has been held that an injunction cannot be granted to restrain the licensing board or officers from granting a liquor license to any particular applicant. In others it appears that the writ may issue at the instance of the proper public officer, but not at the suit of a private individual who does not show that he will suffer any special damage by reason of the license being granted; * * *." 48 C. J. S., Intoxicating Liquors, § 161.

It is true that the present form of action calls for a declaratory judgment rather than an injunction. Yet the effect would be the same, and we believe that the established restrictions should apply where relief under the declaratory judgments act is sought, as here. City of Madison v. Wisowaty, 211 Wis. 23, 247 N. W. 527. The Wisconsin supreme court, in considering a demurrer to a complaint seeking relief under the declaratory judgments act, held the com-

plaint subject to demurrer for failure to show any private or special injury peculiar to the plaintiff. Anderson, Declaratory Judgments, § 30, provides in part:

"In declaratory judgment actions generally, the party seeking to maintain the action must have the capacity to sue and must have a right which is justiciable and subject to a declaration of rights and it must be brought against an adverse party with an antagonistic interest."

*Id.* § 31 states in part:

"The rule is not different in declaratory judgment actions from that obtaining with regard to actions generally, as to the necessity of a personal right in the plaintiff to maintain the action. So a licensor has no right to maintain a declaratory judgment action to protect an abandoned patent, because he has no greater right or interest therein than any one else. The general rule is that a party having only such interest as the public generally has cannot maintain a declaratory judgment action."

It is our opinion that plaintiffs have no interest in the liquor licenses issued to the five defendants which is different in legal character from that which the citizens and taxpayers of Shakopee have in general. Consequently, insofar as they seek a judgment declaring these licenses invalid, we hold that the demurrers to the complaint were properly sustained, for the reason that it does not set out a cause of action in favor of plaintiffs.

Plaintiffs allege in paragraph VIII of their complaint that defendant Edward Rademacher was and is the owner and proprietor of a certain combined and connecting restaurant, lunchroom, and bar known as The Pullman Club, and that the same does not constitute a club within the definition of the act or ordinance; that defendant Frank J. Wampach was and is one of the copartner owners and proprietors of a certain combined and connecting restaurant, bowling alley, lounge, and bar known as the Saint Paul House; that defendant A. V. Krueger was and is the owner and proprietor of a certain combined restaurant, night club, and bar known as The

Riviera or The Riviera Club, and that the same does not constitute a club within the definition of the act or ordinance; that defendant Alex J. Stang was and is the owner of a certain combined transient lodginghouse and bar known as The Pelham Hotel, and that the same does not constitute a hotel within the definition of the act; that defendant Leonard Ayd was and is the owner of a certain combined and connecting restaurant and bar known as the Rock Spring Cafe or Rock Spring Club, and that the same does not constitute a. club within the definition of the act or ordinance; and that at the time all the five defendants filed applications for "on sale" licenses for the year commencing July 1, 1947, none of them was or has since been or is now qualified to apply for or receive such licenses, since none of said establishments constituted or now constitutes a hotel, club, or exclusive liquor store within the definition of the act or the ordinance. Plaintiffs further allege that for many years prior to June 30, 1947, they operated their "on sale" liquor stores as exclusive liquor stores as defined in the act and in full compliance with the provisions of the act and ordinance.

This case comes before us upon demurrers to the complaint. "In the construction of a complaint on demurrer a court may perhaps be required to assume the truth of all the material allegations of the complaint well pleaded, * * *." 5 Dunnell, Dig. § 7542. No evidence has been provided in support of these allegations; that is, we have no record as to the actual facts beyond the allegations. As stated, we are sustaining the demurrers here on the ground that plaintiffs have no interest in the liquor licenses issued to the five defendants which is different in legal character from that of any other citizens or taxpayers in Shakopee. We are not here approving or condoning any practice whereby local governing bodies may issue licenses to sell intoxicating liquor in violation of the liquor control act. While the council may exercise wide discretion as to the issuance of liquor licenses, it is a fundamental intention of the law that in exercising this discretion it must examine and investigate the conditions within the municipality in an official capacity in an effort fairly to determine the matter from the standpoint of upholding the law and doing

what it believes best for the welfare of the municipality, and not from a personal, arbitrary, or capricious standpoint. M. S. A. 340.19 provides in part as follows:

"(1) The failure on the part of any duly constituted public officer, charged by law with the enforcement of sections 340.07 to 340.40 shall constitute non-feasance in office and shall be valid ground for the removal of such officer.

"(2) When any licensee shall wilfully violate the provisions of sections 340.07 to 340.40 his license shall be immediately revoked and his bond forfeited, and no license of any class shall for a term of five years thereafter be issued to the same person or to any person who at the time of the violation owns any interest, whether as holder of more than five per cent of the capital stock of a corporation licensee, as partner, or otherwise, in the premises or in the business conducted thereon, or to any corporation, partnership, association, enterprise, business, or firm in which any such person is in any manner interested.

\*　　\*　　\*　　\*　　\*

"(6) Whoever shall violate any of the provisions of sections 340.07 to 340.40 as to sale, licensing, or any of the regulatory provisions pertaining thereto, as herein provided, shall be guilty of a misdemeanor."

Affirmed.