**LAMPLIGHTER LOUNGE, INC., and Rodnie Schmidt, doing business as Frontier Club, Petitioners and Appellees**

**v.**

**STATE of North Dakota ex rel. Heidi HEITKAMP, Attorney General, Respondent and Appellant.**

Civ. No. 930069.

Supreme Court of North Dakota.

Jan. 5, 1994.

Richard B. Thomas, Thomas Law Firm, Minot, for petitioners and appellees.

Sidney Hertz Fiergola, Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for respondent and appellant.

VANDE WALLE, Chief Justice.

The State of North Dakota appealed from a writ of certiorari issued by the district court ordering the Attorney General to grant Lamplighter Lounge, Inc. and Rodnie Schmidt, d/b/a Frontier Club, liquor licenses for 1993. We affirm.

On December 27, 1991, Rodnie Schmidt was charged in Ward County Court with the criminal offense of gambling, in violation of section 12.1–28–02, N.D.C.C. Schmidt is the owner of Frontier Club, a liquor establishment located in Underwood, North Dakota, and is also a manager, stockholder and secretary/treasurer of Lamplighter Lounge, Inc., (Lamplighter) located in Minot, North Dakota. Schmidt entered a plea of not guilty to the criminal charge and is awaiting trial by jury.

On April 27, 1992, an affidavit and complaint alleging gambling violations by Schmidt, as an officer of Lamplighter, were filed with the Attorney General's Office. After granting Lamplighter's request for a delay, a hearing was scheduled for September 30, 1992, regarding revocation or suspension of Lamplighter's license.

At the administrative hearing, the hearing officer found,

"by the greater weight of the evidence, that Rodnie Schmidt was involved with an illegal gambling operation of the type prohibited by N.D.C.C. § 12.1–28–02. The evidence also shows, by the greater weight of the evidence, that the illegal gaming activities and conduct Rodnie Schmidt was engaged in was while acting as manager of Arrowhead Liquor/Lamplighter Lounge, and occurred on the premises owned and operated by Lamplighter Lounge, Inc."

Despite this finding, the hearing officer concluded that, under the relevant statutory provisions, *see* N.D.C.C. § 5–02–02, N.D.Admin.Code § 10–08–01–01(2), Lamplighter could not be disqualified from retaining its license. Rather, the hearing officer concluded, those statutory provisions require a criminal conviction or entry of a guilty plea by Schmidt prior to license revocation or suspension; mere proof by a preponderance of the evidence at an administrative hearing that Schmidt had violated section 12.1–28–02, N.D.C.C., is not sufficient.

Beyond alleging illegal gaming activity, the affidavit and complaint did not specifically allege that Schmidt was not a person of good

moral character. The Attorney General did not argue at the hearing that Schmidt was of poor moral character, and the hearing officer found that there had been "no evidence offered at the hearing in regard to Rodnie Schmidt's moral character." The hearing officer issued a recommended order that the complaint against Lamplighter be dismissed. *See* N.D.C.C. § 28–32–13(3) ["If the agency head ... is not presiding, then the person presiding shall issue a recommended order which becomes final unless specifically amended or rejected by the agency head...."]. The Attorney General formally dismissed the complaint on November 20, 1992.

On December 14, 1992, Irwin Hunsaid, corporate president of Lamplighter, submitted to the Attorney General an application for renewal of Lamplighter's liquor license. On December 16, 1992, Rodnie Schmidt submitted an application for renewal of Frontier Club's license. In a letter dated December 22, 1992, and postmarked December 23, 1992, the Attorney General wrote Hunsaid:

"This letter serves to inform you that the 1993 state retail alcoholic beverage license application of Lamplighter Lounge, Inc., is hereby denied pursuant to North Dakota Century Code § 5–02–02.

"According to the license application, Rodnie Schmidt is listed as the secretary/treasurer of this corporation. We do not feel Rodnie Schmidt meets the qualification of a person of good moral character as evidenced by his involvement in illegal gambling activities. Therefore, we are unable to issue a license.

"The current state retail alcoholic beverage license of Lamplighter Lounge, Inc., expires at 12:00 midnight on December 31, 1992, at which time any sale or consumption of alcoholic beverages on the Lamplighter Lounge premises must cease.

"Your check number 16956 in the amount of $200 is enclosed with this letter."

In a letter dated and postmarked December 23, 1992, Schmidt was likewise informed that the application submitted on behalf of Frontier Club was denied and that a refund of his application fee would be forthcoming. This letter similarly provided that all alcohol sales and consumption at Frontier Club must cease at midnight on December 31, 1992.

Counsel for Lamplighter and Schmidt, contending that the denial of the liquor license applications violated due process, informed the Attorney General that they might pursue a writ of certiorari. The Attorney General responded, by letter dated December 28, 1992, that review by certiorari would be inappropriate, because "there has been no final agency decision made in this matter" and because Mr. Schmidt "has the right to appeal our preliminary agency decision to the independent hearing office." Significantly, however, Lamplighter and Schmidt were not informed that liquor sales at Frontier Club or Lamplighter would be permitted to continue pending a final administrative determination.

On December 30, 1992, Lamplighter and Schmidt petitioned the District Court of Ward County for a Writ of Certiorari, pursuant to section 32–33–01, N.D.C.C., for an expedited review of the denial of their 1993 liquor license applications. The district court granted the writ of certiorari and ordered that the current licenses would remain in full force and effect pending renewal of the licenses or pending further review by the district court. The court ordered the Attorney General to appear before the court on January 11, 1993, to certify its records concerning the license applications.

On December 31, 1992, the Attorney General notified various law enforcement officials that, in light of pending litigation concerning the liquor licenses, no adverse action should be taken against Lamplighter or Frontier Club regarding the absence of 1993 liquor licenses. A copy of this notice was sent to counsel of Lamplighter and Schmidt.

Due to an apparent misunderstanding, the Attorney General failed to appear at the January 11, 1993, district court hearing. On January 27, 1993, however, the Attorney General scheduled an administrative hearing to be held on February 19, 1993, on the issue of whether the Attorney General had properly denied the applications for 1993 liquor licenses.

Subsequently, the district court issued an order to show cause why the Attorney Gen-

eral should not be held in contempt of court for failing to appear at the January 11, 1993, hearing and ordered the administrative hearing cancelled pending further action by the court. The Attorney General moved the court to reconsider and stay the writ of certiorari pending appeal. The district court heard oral argument on this motion, and, by memorandum opinion, denied the motion and directed the issuance of 1993 licenses to Lamplighter and Schmidt. An appropriate order was filed and this appeal followed.

The Attorney General contends that, under this Court's holding in *Manikowske v. N.D. Workmen's Comp. Bureau*, 373 N.W.2d 884 (N.D.1985), the district court erred by issuing the writ of certiorari and by ordering the issuance of 1993 licenses. First, the Attorney General argues, review by certiorari was improper because administrative review was available, and Lamplighter and Schmidt could not properly bypass the administrative procedures via certiorari. Second, the Attorney General asserts, the decision whether to grant or deny a liquor license application falls squarely within the discretion of the Attorney General and, in light of the evidence of illegal activity on the part of Schmidt, her predecessor acted within his jurisdiction when he denied the liquor license applications. The argument follows that the court not only erred in granting the writ of certiorari but also erred by requiring the Attorney General to perform the discretionary act of issuing liquor licenses.

## I

A writ of certiorari will be granted where an agency has exceeded its jurisdiction and where there is no appeal or another plain, speedy, and adequate remedy available, or when granting the writ is deemed necessary to prevent a miscarriage of justice. N.D.C.C. § 32–33–01. The district court thus faced two issues: whether the Attorney General exceeded its jurisdiction, and whether there were adequate and speedy alternative remedies available. As to the second issue, the district court concluded that, despite the availability of an administrative hearing, the administrative process would not be sufficiently timely or adequate. The de-

termination of whether alternative remedies would be adequate and timely is left to the judgment of the court. N.D.C.C. § 32–33–01.

■ The Attorney General cites *Manikowske, supra*, for the proposition that the availability of administrative review precludes review by certiorari. In *Manikowske*, a petitioner's claim for Worker's Compensation benefits was denied following an informal hearing. Following a motion for rehearing and after exchanging additional evidence and correspondence, the Bureau issued an order affirming the initial order to deny Manikowske's benefits. Manikowske did not appeal from either order.

Over the next two and one-half years, Manikowske made several applications to the Bureau, requesting that his claim be reopened and that he be afforded a full evidentiary hearing. These requests were denied. Finally, Manikowske petitioned the district court for a writ of certiorari, asserting that he was improperly denied a formal hearing; the petition was denied, and the denial affirmed by this court on appeal, because Manikowske could have appealed the original order denying benefits but failed to do so.

*Manikowske* did not involve the timing issues present in this case. Lamplighter and Schmidt were not notified until December 23, 1992, that their liquor licenses would not be renewed for 1993. The Attorney General warned Lamplighter and Schmidt that liquor sales and consumption must cease at midnight on December 31. By December 30, 1992, no administrative hearing had been scheduled, and the Attorney General had not authorized Lamplighter or Schmidt to continue selling alcohol upon expiration of their 1992 licenses. We do not find clear error in the court's determination that the administrative remedy would not be timely or adequate.

## II

The Attorney General contends that, notwithstanding the lack of an available timely review of the decision, the writ of certiorari was improper because her predecessor acted within his jurisdiction in deciding whether or

not to issue the liquor licenses. *See* N.D.C.C. §§ 32–33–01, 32–33–09; *Manikowske, supra.* In *Manikowske* we stated,

"In the context of a certiorari proceeding, we have defined 'jurisdiction' as 'the power and authority to act with respect to any particular subject matter.' *Kostelecky v. Engelter,* 278 N.W.2d 776, 778 (N.D. 1979); *Parker Hotel Company v. City of Grand Forks,* 177 N.W.2d 764, 768 (N.D. 1970). The Bureau had the power and authority to act with respect to the subject matter of Manikowske's claim, which was a claim for benefits under the Workmen's Compensation Act. The Bureau has jurisdiction to administer claims under the Act in accordance with Chapter 65–05, N.D.C.C.

"We have previously held that, where the jurisdiction of an agency is invoked by a party, that party cannot subsequently challenge the agency's jurisdiction by certiorari: 'They cannot at the same time in the same action invoke and establish jurisdiction and then deny its legal effect.' *Baker v. Lenhart,* 50 N.D. 30, 35, 195 N.W. 16, 17 (1922), *quoting Albrecht v. Zimmerly,* 23 N.D. 337, 344, 136 N.W. 240, 242 (1912). Manikowske invoked the jurisdiction of the Bureau when he filed his claim for benefits under the Act, and he cannot now challenge the jurisdiction of the Bureau by certiorari.

"Manikowske argues that 'the North Dakota Workmen's Compensation Bureau has no jurisdiction to deny Manikowske due process of law' by denying him an evidentiary hearing. This is an effort to equate an issue of the legal rights of the parties with a jurisdictional issue which may be raised by certiorari. We have previously held, however, that '[j]urisdiction relates to the power of the tribunal, and not to the rights of the parties.' *Kostelecky v. Engelter, supra,* 278 N.W.2d at 778." *supra,* 373 N.W.2d at 886.

The Attorney General thus argues that, because she has jurisdiction to issue or deny liquor licenses, *see* N.D.C.C. § 5–02–02, her decisions relating thereto are not reviewable by certiorari. As in *Manikowske,* asserts the Attorney General, Lamplighter and Schmidt

cannot invoke the jurisdiction of the Attorney General by applying for liquor licenses and now challenge that jurisdiction by certiorari.

Despite the restrictive language quoted above, we do not read *Manikowske* as a blanket prohibition against the use of certiorari to review actions by the Worker's Compensation Bureau regarding the grant or denial of benefits. The petitioner in *Manikowske* contended that certiorari was appropriate because the Worker's Compensation Bureau exceeded its jurisdiction by using an informal hearing rather than a formal, adversarial hearing. Significantly, we discussed in *Manikowske* whether the use of an informal hearing exceeded the power and authority of the Bureau and, relying on *Davis v. North Dakota Workmen's Comp. Bureau,* 317 N.W.2d 820 (N.D.1982), concluded that it did not. Also, we observed that there is a basis for challenging the jurisdiction of an agency when no hearing is afforded to a claimant and there is no right to appeal. *Manikowske, supra,* 373 N.W.2d at 887 [citing *State ex rel. Wehe v. Frazier,* 47 N.D. 314, 182 N.W. 545 (1921) ].

In the long line of certiorari cases decided by our court, we occasionally find explorations into the decision-making proceedings of officers and inferior tribunals to determine if the officers of tribunals exceeded their jurisdiction. *E.g., Schiermeister v. Riskedahl,* 449 N.W.2d 566 (N.D.1989); *Waltman v. Austin,* 142 N.W.2d 517 (N.D.1966); *State ex rel. Ness v. Board of City of Fargo,* 63 N.D. 33, 245 N.W. 887 (N.D.1932); *State ex rel. Wehe v. Frazier, supra.*

In *State ex rel. Ness v. Board of City of Fargo, supra,* this court reviewed a district court grant of certiorari following a city commission's removal of an officer. Review by certiorari was held proper, not only to the issue of whether the commission had jurisdiction over the officer and subject matter, but also to the issue of whether there was "any evidence upon which the city commission could act." 245 N.W. at 890. The *Ness* court stated,

" '[Some] courts hold that the evidence may be brought up, not for the purpose of weighing it, to ascertain the preponderance,' but merely to ascertain whether

there was any evidence at all to sustain the decision of the inferior tribunal—whether it furnished any legal and substantial basis for the decision. The latter is the doctrine of this court as to the office of the writ of certiorari....'

"This is the rule approved by this court in the case of Baker v. Lenhart, 50, N.D. 30, 195 N.W. 16, and in the case of State ex rel. Wehe v. Frazier, 47 N.D. 314, 182 N.W. 545. In the case of State ex rel. Wehe v. Frazier, supra, the tribunal exceeded its jurisdiction by acting without any evidence, and that is the question in the instant case." 245 N.W. at 891 (citations omitted).

In *State ex rel. Wehe v. Frazier, supra,* the removal by the Governor of a commissioner of the Worker's Compensation Bureau was reviewed by certiorari. Statute provided that such removal may be for cause only. It was evident from the record, however, that "the Governor overlooked and ignored, in order to exercise his power of removal for cause, the necessity of granting a hearing...." 182 N.W. at 549. The power of the Governor to remove the commissioner was not disputed. Removal, without first establishing at a hearing legal cause, exceeded the Governor's jurisdiction, however. The court concluded that holding a hearing and presenting legal evidence upon which to establish cause for removal was "jurisdictional for the exercise of the power of removal." *Id.*

In *Waltman v. Austin, supra,* the court was asked to decide whether a lower court exceeded its jurisdiction when it imposed a criminal sentence that exceeded the maximum sentence authorized by statute. It was conceded that the court had jurisdiction to declare the punishment for an offense. Nonetheless, the *Waltman* court concluded that an excessive sentence does exceed the jurisdiction of the court and that certiorari was the proper remedy for the aggrieved criminal defendant. Although the holding was expressly limited to criminal cases, we find it instructive.

Also in the criminal context, we have long held that certiorari may be used to review a magistrate's decision to bind over a defendant after a preliminary hearing. *Schiermeister v. Riskedahl, supra; State v. Skar,* 313 N.W.2d 746 (N.D.1981); *State v. Persons,* 201 N.W.2d 895 (N.D.1972); *Green v. Whipple,* 89 N.W.2d 881 (N.D.1958). In such cases, we have held, review will extend to whether there is some relevant evidence upon which the lower court made its findings of probable cause. We stated in *Schiermeister,*

"A magistrate exceeds his jurisdiction when his probable cause finding to bind over a defendant is based on either no evidence that the defendant committed the offense or on irrelevant evidence. *State v. Skar,* 313 N.W.2d 746 (N.D.1981). On review, this Court does not weigh the evidence but simply ascertains whether there was some relevant evidence upon which the magistrate found probable cause. *Id.* at 749." 449 N.W.2d at 567.

Just as the Governor has the power of removal, and a magistrate the power to bind over a defendant, the Attorney General has the power and authority to issue or deny liquor licenses. Yet Governors and magistrates, while exercising these powers, may exceed their jurisdiction by making decisions in the absence of legal evidence. *Schiermeister v. Riskedahl, supra; State ex rel. Ness v. Board of City of Fargo, supra; State ex rel. Wehe v. Frazier, supra.* The issue presented in this case is whether the Attorney General exceeded his authority by denying the license applications of Lamplighter and Schmidt, subsequent to the hearing officer's determination and in the absence of evidence of poor moral character other than the evidence adduced at the prior administrative hearing. The district court concluded that the Attorney General exceeded his jurisdiction; we agree.

The Attorney General attempted on September 30, 1992, to revoke or suspend Lamplighter's license based on the illegal gaming activities allegedly conducted by Schmidt. The Attorney General had a full and fair opportunity to argue his version of the facts and applicable law. The hearing officer concluded that the proof of misconduct by Schmidt was insufficient for license revocation or suspension. Although the At-

torney General apparently did not argue that the gaming evidenced poor moral character, the issue should have been raised at the hearing. The hearing officer issued its recommended order that the complaint against Lamplighter be dismissed. This recommended order was not binding upon the Attorney General. N.D.C.C. § 28–32–13(3). The Attorney General at that time had jurisdiction to determine if the alleged gambling activity constituted poor moral character. The Attorney General adopted the order, however, and made it a final order by dismissing the complaint.

■ The doctrine of administrative res judicata prevents collateral attacks on administrative agency decisions and protects successful parties from duplicative proceedings. *Berdahl v. N.D. State Personnel Bd.*, 447 N.W.2d 300 (N.D.1989); *Lass v. N.D. Workmen's Comp. Bureau*, 415 N.W.2d 796 (N.D. 1987); *Amerada Hess Corp. v. Furlong Oil & Minerals Co.*, 348 N.W.2d 913 (N.D.1984). Administrative res judicata is simply the judicial doctrine of res judicata applied to an administrative proceeding. We have stated that "[A] valid, existing final judgment from a court of competent jurisdiction is conclusive, with regard to the issues raised, or those that could have been raised, and determined therein, as to the parties and their privies in all other actions." *Peacock v. Sundre Tp.*, 372 N.W.2d 877, 878 (N.D.1985). The res judicata effect of an agency decision extends to matters adjudicable at the time of that decision. *Lass v. N.D. Workmen's Comp. Bureau, supra.*

■ When the Attorney General notified Lamplighter and Schmidt that their 1993 applications would be denied, no new misconduct by Schmidt of Lamplighter was alleged. Rather, the same conduct which was held to

be insufficient for license revocation or suspension at the September 30, 1992, administrative hearing was alleged to be sufficient for denying the license renewal applications. Schmidt and Lamplighter successfully defended against the Attorney General's attempt at revocation; the doctrine of res judicata protects them from being forced to defend against another attack.

■ Appropriately, administrative res judicata has been phrased in terms of the agency's "jurisdiction." *Lass v. N.D. Workmen's Comp. Bureau, supra.* Determinations on the issue of Lamplighter's and Schmidt's fitness to hold liquor licenses, based on the evidence previously considered at the administrative hearing, were removed from the Attorney General's jurisdiction by the doctrine of res judicata. Because no further misconduct was alleged, the Attorney General lacked evidence upon which to deny Lamplighter's and Schmidt's 1993 liquor license applications; a decision made in the absence of evidence exceeds the jurisdiction of the tribunal, agency or officer. *E.g. Schiermeister v. Riskedahl, supra; State ex rel. Ness v. Board of City of Fargo, supra.*[1] We conclude that the denial of Lamplighter's and Schmidt's applications thus exceeded the Attorney General's jurisdiction.

### III

It is significant, we believe, to state what our opinion in this case does not hold. The statutes, Chapter 5–02, N.D.C.C., governing retail licenses for the sale of alcoholic beverages, do not distinguish between a renewal of an existing license and a first-time license. In *Smith v. City of LaMoure*, 77 N.D. 658, 44 N.W.2d 789, 795 (1950), this court stated:

---

1. Concededly, a concurrent line of cases in this state appears to severely restrict the scope of review upon certiorari. *E.g., City of Fargo v. Annexation Review Commission*, 148 N.W.2d 338 (N.D.1966); *State ex rel. Dreyer v. Brekke*, 75 N.D. 468, 28 N.W.2d 598 (1947); *State ex rel. Craig v. N.D. Workmen's Comp. Bureau*, 53 N.D. 649, 207 N.W. 555 (1925); *Baker v. Lenhart*, 50 N.D. 30, 195 N.W. 16 (N.D.1922). Under these cases, review on certiorari appears to be limited to whether the agency, officer or tribunal had the general authority to make its decision. *See gen-*

*erally*, Charles L. Crum, *The Writ of Certiorari in North Dakota*, 27 N.D.L.Rev. 271 (1951). We read *State ex rel. Wehe, State ex rel. Ness, Waltman* and *Schiermeister*, and cases cited therein, not as irreconcilable with *City of Fargo, State ex rel. Dreyer, State ex rel. Craig,* and *Baker,* but rather as tempering the restrictive language of those cases; review on certiorari will never involve reweighing the evidence, but it may extend to the issue of whether there is any evidence upon which a decision may be based.

"The Liquor Control Act makes no reference to an application for a renewal of a license. It refers and provides only for the issuance of licenses pursuant to an application. There is no suggestion that the holder of a license acquires any right to have another license issued because of his having held or then holding a license."

Relying on *Paron v. City of Shakopee*, 226 Minn. 222, 32 N.W.2d 603 (1948) [holding that an expired license conferred no rights in the license unless statute entitles license to renewal upon compliance with certain conditions], the Court observed that in this state, as in Minnesota, "no reference is made in the laws to an application for a renewal of a liquor license. Each applicant for a license must submit an application precisely as though he were applying for a license for the first time."[2] *Smith v. City of LaMoure, supra* 44 N.W.2d at 796. *See also Federal Sav. and Loan Ins. Corp. v. Morque*, 372 N.W.2d 872 (N.D.1985) [liquor license confers no irrevocable or vested rights upon licensee].

 The statutes have not been amended to draw that distinction nor is it our purpose, or for that matter, our function, to draw such a distinction. The issue of whether such a distinction should be drawn is one for the Legislature. Thus, we do not purport to decide the result of a denial of a renewal of a license, based on similar conduct, where there was no prior attempt to revoke the license for that conduct. We hold only that where the licensing authority has attempted to revoke an existing license for specific conduct and fails on the merits to do so, it has no jurisdiction under the principle of res judicata to subsequently use that same conduct as reason to deny a renewal of the license.

The district court's writ of certiorari ordering that the Attorney General issue 1993

liquor licenses to Lamplighter and Schmidt is affirmed.

MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.

---

**2.** Subsequent to the *Smith* decision, section 5–02–04, N.D.C.C., was amended to include a statement that "A reinstatement fee of one hundred dollars is required in addition to the annual license fee for each license renewal applied for after December thirty-first." N.D.Admin.Code, Article 10–08, contains the rules enacted by the Attorney General governing licensing requirements. Section 10–08–01–01, N.D.Admin. Code, refers to the qualifications for license and specifies that no retail license shall be issued to any person "nor shall any such previously issued license be renewed or retained" unless a sworn statement is filed showing qualifications prescribed in section 5–02–02, N.D.C.C. Neither the statutory amendment nor administrative rule grants any special rights to a renewal applicant.