## STATE v. DANIEL SCATENA.[1]

November 1, 1901.

Nos. 12,765—(23).

**Municipal Ordinance—Sale of Intoxicating Liquor.**

A municipal ordinance providing that one who applies for a liquor license must make an affidavit designating the place where the business is to be conducted, that the applicant will carry it on personally, and that the rooms in which it shall be conducted are not adjacent to any building wherein theatrical or variety entertainments are conducted, is a reasonable exercise of the power conferred upon the municipality by its charter.

**Conflict of State Statute.**

The general laws of the state (Laws 1887, chapters 5, 6, 81) regulating the liquor traffic are not inconsistent with such city ordinance. The ordinance is a law, and a violation of its provisions is an unlawful act, within the meaning of G. S. 1894, § 6371.

**Perjury.**

One who executed a false affidavit in the particulars defined by the ordinance is guilty of perjury.

**Authority of Notary Public.**

Such affidavit being required by law, notaries public are authorized to administer the oath.

Defendant was indicted for perjury. A demurrer to the indictment was overruled by an order of the district court for Hennepin county, Harrison, J., and the case was certified to the supreme court for the decision of certain questions, which are set out in full in the opinion. Order affirmed.

*W. B. Douglas*, Attorney General, *C. W. Somerby*, Assistant At-

[1] Reported in 87 N. W. 764.

torney General, *F. H. Boardman*, County Attorney, and *Al. J. Smith*, Assistant County Attorney, for the state.

*Erwin, Ferree & Mead*, for defendant.

LEWIS, J.

The defendant was indicted for perjury under G. S. 1894, § 6371.

The indictment sets forth in detail, substantially, that the defendant applied to the common council of the city of Minneapolis for a liquor license, and in connection therewith made an affidavit particularly setting forth the place where the business was to be carried on; that such license was to be taken out for the purpose of conducting the business personally, and not as the agent of any other person; and that the rooms where it was to be conducted were not adjacent to any building wherein theatrical or variety entertainments were to be carried on. The indictment states that defendant swore falsely in these respects in making his affidavit; that in truth he did not intend to carry on the business in his own name, but purposed to conduct it for the benefit of some other person; and that he knew that the place designated in the affidavit adjoined a building wherein were to be conducted theatrical and variety entertainments.

To this indictment defendant demurred upon the grounds: First, that the act of omission charged as an offense is not clearly and distinctly set forth in ordinary and concise language, without repetition; second, that the act or omission charged as the offense is not named with such a degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case; and, third, that the facts stated in the indictment do not constitute a public offense.

The demurrer was overruled, and the trial court certified to this court certain special questions, as follows:

First. Whether the offense of perjury can be based upon an extrajudicial oath.

Second. Whether the offense of perjury can be based upon an oath required by an ordinance.

Third. Whether an oath which is required by an ordinance is an oath "required by law."

Fourth. Whether an indictment which contains the words, "was then and there required of him * * * by that city ordinance," etc., can be sustained under that clause or part of G. S. 1894, § 6371, which reads, "or may lawfully be administered."

Fifth. Whether an oath administered pursuant to an ordinance is an oath which "may lawfully be administered."

Sixth. Whether the city charter of the city of Minneapolis authorized the council to exact an affidavit or oath from persons applying for saloon licenses.

Seventh. Whether a notary public has power or authority to administer an oath required by an ordinance.

G. S. 1894, § 6371, defining perjury, reads as follows:

"A person who swears or affirms that he will truly testify, declare, depose or certify, or that any testimony, declaration, deposition, certificate, affidavit, or other writing by him subscribed, is true, in an action or a special proceeding, or upon any hearing or inquiry, or on any occasion in which an oath is required by law, or is necessary for the prosecution or defense of a private right, or for the ends of public justice, or may lawfully be administered, and who in such action or proceeding, or on such hearing, inquiry, or other occasion, willfully and knowingly testifies, declares, deposes, or certifies falsely in any material matter, or states in his testimony, declaration, deposition, affidavit, or certificate any material matter to be true which he knows to be false, is guilty of perjury."

1. Can the offense of perjury be based upon an extrajudicial oath?

"Oaths are * * * judicial * * * when taken in some judicial proceeding." * * * Extrajudicial oaths are those "not taken in any judicial proceeding, or without any authority of law, though taken formally before a proper person." Black, Law Dict. p. 837. We assume counsel applies the term "extrajudicial oath" to proceedings not strictly judicial, but our statute does not confine the oath or affirmation therein mentioned to judicial proceedings. It includes any hearing, or any occasion on which an oath is required by law, or on which an oath may lawfully be administered. The words "* * * or other occasion, willfully and knowingly testifies, declares, deposes or certifies falsely in any

material matter, or states in his testimony, declaration, deposition, affidavit, * * *" do not refer especially to judicial proceedings, but such occasion may be any proceeding, judicial or otherwise, which is pursuant to some law. The oath here referred to is not a gratuitious one, but must be an oath administered pursuant to, and required or authorized by, some law. State v. McCarthy, 41 Minn. 59, 42 N. W. 599.

2. The second, third, fourth, fifth, and sixth questions may be considered under one head.

The point made is that, within the meaning of the act defining perjury, an ordinance requiring the execution of an affidavit is not a law, but merely a regulation of the municipality. It is further claimed that the charter of Minneapolis does not provide for such an affidavit, and hence it was not provided by law; that the general laws of the state in reference to the issuing of licenses and regulation of liquor traffic supersede and control, and are inconsistent with, the regulation of licenses as provided by the ordinance referred to in the indictment, and therefore, since the regulation does not provide for the execution of such affidavit, the ordinance was of no effect, and did not become a law, within the meaning of the statute defining perjury.

In the case of State v. Peterson, 38 Minn. 143, 36 N. W. 443, it was held that the provisions of Laws 1887, cc. 5, 6, 81, in relation to the sale of intoxicating liquors were made specially applicable to cities, and supersede all inconsistent charter provisions as to the terms and conditions upon which licenses may be issued. And it was further held that such provisions were complete in themselves, and did not require any additional local legislation by city councils to render them operative and effectual. In that case the defendant was convicted for keeping open a saloon on the Sabbath day, contrary to the express provisions of the statute. There was not involved the question of the power of the municipality to regulate the granting of licenses by provisions not inconsistent with the statute. In fact, it appears that the council had enacted no provisions with reference to the sale of liquor on the Sabbath day.

By the charter of the city of Minneapolis that municipality is

given power to license and regulate all persons vending, dealing in, or disposing of spirituous, vinous, or fermented malt liquors, and to make, ordain, publish, enforce, alter, amend, or repeal all such ordinances for the government and good order of the city, for the suppression of vice and intemperance, and for the prevention of crime, as it shall deem expedient. By this charter the state delegated to the city council authority to issue licenses for the sale of liquors, and empowered it to enact the necessary ordinances for the accomplishment of that purpose. In pursuance of such authority an ordinance was adopted which provided that licenses should be issued and the business conducted in the manner set out in the indictment, and heretofore substantially stated.

The method adopted by the city council and the requirements demanded by the ordinance were proper and reasonable, and within the authority of the council as conferred upon it by the charter. It was the intention of the legislature to leave to municipalities the question not only of the advisability of issuing licenses at all, but also, in the proper exercise of the police power, the regulation of that traffic by confining it within proper limits. To exercise a reasonable control over such traffic, it is not only proper to limit it by the amount of the license fee, but also with regard to the character of people permitted to engage in it, the character of buildings in which it should be conducted, and the location with reference to other lines of business, all for the purpose of restraining any unwholesome influences likely to flow therefrom. In order to accomplish this purpose it was not only proper, but entirely reasonable, for the council to provide that a person seeking to go into such business should declare himself in advance, upon oath, to the effect that the business should be carried on within such limits if he were granted a license.

It follows, therefore, that the general law of the state, through the charter, conferred upon the city of Minneapolis the power to regulate the liquor traffic and issue licenses to a reasonable extent, not inconsistent with the state laws. The ordinance on which this case is based was in pursuance of and within the limits of the power of the council so granted, and it therefore follows that such ordinance became a law and the acts prohibited

thereby were unlawful, and an oath or affidavit made in connection therewith was made in pursuance of the law; and, if such oath or affidavit was false, it became perjury, within the meaning of the statute defining it.

3. Has a notary public power or authority to administer an oath required by an ordinance? G. S. 1894, § 2271, provides that notaries public shall have power to administer all oaths required or authorized by law. We have already defined what is meant by law in this case. The oath was one which was made in compliance with the law, and was authorized to be administered by a notary public.

Order affirmed.