JOHN ABELN AND OTHERS v. CITY OF SHAKOPEE AND OTHERS.
LAWRENCE P. RUPPERT AND OTHERS v. COUNTY OF SCOTT AND OTHERS.[1]

June 27, 1947.

Nos. 34,484, 34,485, 34,486, 34,487.

[1]Reported in 28 N. W. (2d) 642.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, and *Irving M. Frisch,* Special Assistant Attorney General, for appellant Dudley C. Ericson as Liquor Control Commissioner.

*Julius A. Coller, II,* and *Harold E. Flynn,* for other appellants.

*Moonan, Sturner & Heinen* and *Harry E. Ryan,* for respondents.

LORING, CHIEF JUSTICE.

These two cases involve the revocation of 19 licenses to sell nonintoxicating malt liquor at retail, held severally by the various plaintiffs. For convenience, such licenses will be hereinafter referred to as "beer licenses." M. S. A. § 340.025 (L. 1939, c. 138, § 1), requires the revocation without notice and without a hearing of any such license of—

"any person who is also the owner and holder of, or to whom there is hereafter issued, a federal retail liquor dealer's special tax stamp

for the sale of intoxicating liquor at any place unless there has also been issued to such person a license to sell intoxicating liquor pursuant to the laws of this state at such place; * * *."

Each of the licensees here involved falls within the terms of the statute requiring revocation of his beer license, and these suits were brought to enjoin the issuing authorities from revoking such licenses, on the theory that § 340.025 is unconstitutional. Demurrers were interposed. They were overruled, and temporary injunctions were granted restraining the issuing authorities from revoking the licenses. Appeals to this court followed.

Plaintiffs' assertion that § 340.025 is unconstitutional is grounded on the contentions (1) that it places a burden upon the taxing power of the United States; (2) that it offends the Fourteenth Amendment, in that possession of a federal tax stamp bears no real or substantial relation to the regulation of the liquor traffic by the state and because the law is arbitrary and capricious; and (3) that the licenses are property and cannot be revoked without the due process of notice and a hearing.

Plaintiffs place their chief reliance on the case of North Dakota ex rel. Flaherty v. Hanson, 215 U. S. 515, 519, 30 S. Ct. 179, 180, 54 L. ed. 307, 308, where the Supreme Court of the United States, reversing the supreme court of North Dakota, held invalid, as a burden upon the federal taxing power, a statute which, in brief, provided:

"* * * A notice of the particulars contained in the receipt or license and other details respecting the place where the tax receipt or license is posted, etc., is required to be made for three weeks in official newspapers, and the fees for publication are declared to be the same 'as allowed by law for the publication of other legal notices.' The holder of the receipt or license is also required to place and keep posted, at all times, with the government tax receipts or license, an affidavit of the fact of publication and the obtaining of such license, etc., together with a copy of the notices or advertisements. A duly authenticated copy of the tax receipt or license is

required to be filed with a named official, *to whom a ten-dollar filing fee is to be paid,* and such official is required to publish, in certain official newspapers, the first week in each month, a list of all such tax receipts or licenses filed during the previous month, such notice to be published one week in each newspaper." (Italics supplied.)

· As we view it, there is a clear distinction between the burdens imposed upon the holder of a federal tax receipt by the North Dakota statute, there under consideration, and the revocation of a license to sell nonintoxicating beer if the licensee is the holder of a federal tax stamp. We can see no burden placed upon the federal taxing power by the law presently challenged. Unlike the North Dakota statute considered in the above-cited case, the Minnesota statute requires nothing of the holder of the federal tax stamp. If the state licensee does not sell intoxicating liquor, he does not need the federal stamp. If he does sell such liquor, he must have both the federal stamp and the state license to sell intoxicating liquor. It was the legal duty of the licensee to have both the federal stamp and the state license if he engaged in selling intoxicating liquor, so § 340.025 imposed no burden upon him which he did not already have. If the licensee sells no intoxicating liquor, the United States levies no tax and imposes no punishment. It asserts no interest in selling tax stamps for which the purchaser could have no need, except to avoid federal prosecution for acts which violate the state law. Reduced to its simplest terms, the argument of plaintiffs is a contention that the law deprives the United States government of the patronage of potential lawbreakers and therefore burdens its taxing power.

Even in the North Dakota case, the Supreme Court distinguished the case before it from those cases where the tax receipt creates a (215 U. S. 526, 30 S. Ct. 183, 54 L. ed. 311) *"prima facie* presumption" that the person paying the tax and holding the receipt is engaged in the business of selling liquor. True, the court did not intimate an opinion as to the soundness of the decisions which upheld the *"prima facie* presumption," but distinguished such cases from

the North Dakota case and based its opinion that the North Dakota law was invalid solely upon the added burdens, conditions, and requirements imposed by that statute upon the holder of the tax receipt.

It must be borne in mind that the section of the statute here under consideration defines no crime, nor does it attempt to create a presumption of guilt. It merely determines that the licensee is an unfit person to hold a state beer license, based on the obvious inference that he must have bought the federal tax stamp for the purpose for which such stamps are usually bought. The North Dakota case is clearly distinguished by the opinion of a three-judge Federal District Court in Minnesota in Jung v. City of Winona (D. C.) 71 F. Supp. 558, in which Circuit Judge John B. Sanborn took part with District Judges Gunnar H. Nordbye and Dennis F. Donovan in holding constitutional the identical statute here under consideration.

■ The contention that the provisions of the statute here under consideration bear no real and substantial relation to the regulation of the liquor traffic by the state is so fully and completely answered by the opinion in Jung v. City of Winona (D. C.) 71 F. Supp. 560, *supra,* that we quote from that opinion:

"We think that the statute in suit bears a *real and substantial relation to the regulation of the liquor traffic* by the State, and does not represent an arbitrary or capricious exercise of legislative power. It *reasonably can be assumed that persons who procure retail liquor dealers' federal tax stamps* do so for a purpose, and that it is *more likely* that the *holder of such a stamp will sell intoxicating liquor* than a person who, if he sells such liquor, will be subject to both state and federal prosecution. *It is inconsistent for one authorized by the State to sell only non-intoxicating liquor,* to hold a federal license to sell intoxicating liquor. The existence of power, opportunity, and temptation to do what is against public policy is a sufficient basis for legislative action. Paramount Pictures, Inc., v. Langer, supra, 23 F. Supp. 890, at pages 900, 901, and cases cited.

"The plaintiffs assert that the statute creates a conclusive presumption that they have violated the law, and that the presumption

is unreasonable and invalid. There is no merit in the argument. The statute creates no presumption of any kind. It is apparent that the Legislature, in enacting the statute in suit, concluded that the holders of retail liquor dealers' federal tax stamps, who had no state licenses to sell intoxicating liquor, *were unsuitable persons to have state licenses for the sale of non-intoxicating malt liquor, because they were potential (although not actual) law violators."* (Italics supplied.)

The sale of so-called nonintoxicating beer is so intimately related to the problem of enforcement of the law against the sale of intoxicating beverages that its regulation comes fairly within the police power of the state. If such regulation by any reasonable inference aids in the regulation of the liquor traffic, it is a legitimate, and not an arbitrary or capricious, exercise of that power. That in the small area here involved there are at least 19 beer licensees holding federal tax stamps is not without significance.

▆ There remains to consider the contention that the beer licenses are property and cannot be taken away from the licensees without notice and a hearing. With this contention we cannot agree. Clearly, the original constitution did not deprive the states of their police power, which they might exercise for the protection of the public health, welfare, and morals. Bartemeyer v. Iowa, 85 U. S. (Wall.) 129, 21 L. ed. 929. The sale of nonintoxicating beer may be regulated by the state under its police power. No restraints were imposed upon the police power by the adoption of the Fourteenth Amendment. Mugler v. Kansas, 123 U. S. 623, 8 S. Ct. 273, 31 L. ed. 205. Consequently, when the Eighteenth Amendment to the constitution was repealed by the Twenty-first Amendment,[2] the constitutional law, except as to importations of liquor into a state in violation of

[2]The Twenty-first Amendment not only repealed the Eighteenth Amendment, but prohibited the transportation or importation of intoxicating liquors into a state, territory, or possession of the United States for delivery or use therein in violation of the laws thereof. For the broad interpretation of this provision, see State Board of Equalization v. Young's Market Co. 299 U. S. 59, 62, 57 S. Ct. 77, 78, 81 L. ed. 38, 40-41; also, Mahoney v. Joseph Triner Corp. 304 U. S. 401, 58 S. Ct. 952, 82 L. ed. 1424.

its laws, reverted to its condition prior to the adoption of the Eighteenth Amendment. The police power of the states was unimpaired. Under that power, these licenses could be revoked.

In 3 McQuillin, Municipal Corporations (Rev. 2 ed.) § 1108, p. 714, the distinguished author said:

"* * * A ·license to carry on a business which affects health, safety, morals or the public welfare may be revoked by virtue of the police power. * * *

"Before revocation, in the absence of statutory or charter requirement, there is no necessity for notice or an opportunity to be heard, since the revocation of a license is an administrative act."

This court in State v. Hovorka, 100 Minn. 249, 252, 110 N. W. 870, 871, 8 L.R.A.(N.S.) 1272, 10 Ann. Cas. 398, said:

"* * * No person can acquire a vested right to continue, when once licensed, in a business, trade, or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination * * * to such reasonable regulations and restrictions as the legislature may from time to time prescribe. [Citing cases.] Regulations so prescribed and conformed to by the citizen may be subsequently changed or modified by the legislature, whenever public interests require it, without subjecting its action to the charge of interfering with contract or vested rights. This is elementary."

There is, however, an element which, in our opinion, forecloses the licensees from any contention that they are entitled to notice and a hearing before their licenses may be revoked. Section 340.025 as it stood at the time the licenses were issued or renewed, and which thus became a part and condition of the licenses, provided for their revocation without a notice or a hearing in the event of possession by the licensee of a federal liquor tax stamp. In Darling Apartment Co. v. Springer (Del.) 22 A. (2d) 397, 401, 137 A. L. R. 803, the court said that the right of the licensee—

"can rise no higher than the terms of the law under which the license is issued; and the licensee accepts the privilege subject to such conditions, including the cause and manner of revocation or suspension as the Legislature may see fit to impose."

We agree that that is a sound rule.

The orders overruling the demurrers did not certify that the question presented was important and doubtful, but obviously the demurrers should have been sustained.

The orders granting the temporary injunctions are reversed.

[1]Reported in 28 N. W. (2d) 652.