# BEN CLEVELAND AND OTHERS v. COUNTY OF RICE AND OTHERS.[1]

December 26, 1952.

No. 35,770.

*John E. Coughlin,* for appellants.

*Urban J. Steimann,* for respondents.

[1]Reported in 56 N. W. (2d) 641.

LORING, CHIEF JUSTICE.

This is an action to enjoin defendants from enforcing a certain resolution of the board of county commissioners of Rice county, which regulates the closing hours of rural business establishments holding nonintoxicating malt liquor licenses.

In May 1951, the board of county commissioners adopted a resolution providing that no *sale* of nonintoxicating malt liquor shall be made after midnight and further providing that all places of business selling such beverages must *close* completely at that time except for cleaning purposes. The resolution, by its terms, applied only to the *rural* section of the county. Plaintiffs are owners, operators, and managers of certain taverns, night clubs, restaurants, cafes, grocery stores, dance pavilions, and lake resorts in rural Rice county. This appeal is from an order of the district court refusing to grant a temporary injunction and vacating an existing temporary restraining order.

Appellants do not challenge the power of the state legislature to establish the closing hours of establishments wherein the sale of nonintoxicating malt liquor is licensed or its authority to delegate such power to the county governments.[2] Therefore, we do not pass upon the constitutionality of the legislation delegating such power to the county. Williams v. Mack, 202 Minn. 402, 278 N. W. 585. Appellants do contend that under the present laws no such power or authority is vested in the board of county commissioners and that, if the board does have such power, this particular resolution is unreasonable, in restraint of trade, and is special and class legislation.

■ The county governments of this state can exercise only such powers as are expressly granted them by the legislature and such as may be fairly implied as necessary to the exercise of the express powers. Grannis v. Board of Co. Commrs. 81 Minn. 55, 83 N. W. 495; State ex rel. Johnson v. Smith, 84 Minn. 295, 87 N. W. 775; In re Matter of Allowance of Myers Claim, 146 Minn. 103, 177 N. W.

[2]See, State v. Ives, 210 Minn. 141, 297 N. W. 563; Bernick v. City of Little Falls, 191 Minn. 128, 253 N. W. 369.

1013. The state has conferred on the governing body of each county two express powers relative to the sale of nonintoxicating malt beverages:

"* * * the authority to license and regulate the business of vendors at retail * * * of non-intoxicating malt liquors * * *" (M. S. A. 340.01)

and the authority to—

"* * * within the time the laws of this state permit such sale, further limit the hours of sale of non-intoxicating liquors * * *." (§ 340.022)

Therefore, the question for judicial determination is whether or not the effective exercise of these express powers necessitates the implied authority to require such establishments to close completely during the time in which sales are forbidden.

In discussing the implied powers of a city to regulate the liquor traffic, this court in City of Duluth v. Cerveny, 218 Minn. 511, 516, 16 N. W. (2d) 779, 783, quoted with approval from Thielen v. Kostelecky, 69 N. D. 410, 417, 287 N. W. 513, 517, 124 A. L. R. 820:

"The power 'to regulate the retail sale of alcohol and alcoholic beverages' conferred upon the governing board of a city includes the power to prescribe such reasonable rules and impose such reasonable restrictions as to the manner and circumstances in which the business shall be conducted as will tend to promote order and protect the public from harm."

This court in the City of Duluth case also quoted 33 C. J., Intoxicating Liquors, § 70:

"* * * When a municipal corporation is invested with power to license or regulate the sale of intoxicating liquors, it has implied authority to make all such ordinances as may be necessary to make the grant of power effectual, and to preserve the public peace, good order and security against dangers arising from the traffic in such liquors."

Although this language was used in connection with the authority of cities to deal with intoxicating liquor, similar considerations apply to the power of the county to deal with nonintoxicating malt liquor.

The business of selling alcoholic beverages at retail has always been considered especially susceptible to local control. See, Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538; City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779. When the legislature has delegated such control to a local governing body, it cannot be inferred that it intended to confer any broad authority to control all of the activities of a licensee. But the intent of the legislature to invest these subdivisions with the power to regulate other activities of a licensee which conflict with, or are closely related to, the sale of such beverages may and should be implied, insofar as such regulation is reasonably necessary to effectuate the control expressly conferred.[3] Other businesses conducted on the same premises on which the sale of such beverages is licensed are such related activities. That it is less difficult to determine whether or not a place of business is *open,* than to determine whether or not illegal *sales* of certain beverages are being made in an open establishment, is obvious. Therefore, without the authority to regulate the closing hours of licensed establishments, the power to restrict the hours of sale may well be rendered a nullity, especially in areas of relatively light police supervision. The authority to regulate closing is a necessary component of the effective exercise of the power to restrict sales.

"Periods for keeping saloons closed may be prescribed under municipal power to regulate and restrain liquor dealers and their places of business, or under power to license sales and to provide for peace and good order." (Citing Staates v. Borough of Washington, 44 N. J. L. 605, 43 Am. R. 402.) 30 Am. Jur., Intoxicating Liquors, § 37.

---

[3]In fact, the general moral character of the applicant may be determinative of whether or not he can obtain a license. See, State ex rel. Miller v. Reiter, 140 Minn. 491, 168 N. W. 714.

"It is clearly competent for a municipality or other local subdivision, under such general grant of authority, to ordain that all places where intoxicating liquors are sold shall be closed on Sunday, and to prohibit, under penalties, the sale of liquor on that day, and also on election days, and to require that all such places shall close their doors and cease doing business at a designated hour of the night, and remain closed until a designated hour of the following morning, in the absence of a statute providing otherwise." (Citing cases.) 48 C. J. S., Intoxicating Liquors, § 50b.

There is a further indication that the legislature intended to give the board of county commissioners the power to regulate closing hours. The title of § 340.022, when enacted, read:

"An act relating to the *closing hours* for the on sale of nonintoxicating malt liquors." (Italics supplied.) L. 1939, c. 402.

When this section was amended in 1949, the title of the amendment again referred to "closing hours."[4] The title of an act is properly to be considered in determining legislative intent. State v. N. W. Tel. Exch. Co. 107 Minn. 390, 120 N. W. 534; Underhill v. State, 208 Minn. 498, 294 N. W. 643; LaBere v. Palmer, 232 Minn. 203, 44 N. W. (2d) 827.

We conclude, therefore, that the express delegation to the board of county commissioners of the power to license, regulate, and restrict the hours of sale of nonintoxicating malt beverages includes, by implication, as necessary to the effective exercise of that power, the authority to require that the premises on which such sale is licensed must close completely during the hours in which sales are prohibited. See, Opinions Attorney General, No. 217-F, September 9, 1943, and No. 217-F, November 6, 1947.

There have been numerous prosecutions in Minnesota for the violation of such regulations based on implied authority from similar express grants of power.[5]

---

[4]L. 1949, c. 654.

[5]State v. Ludwig, 21 Minn. 202 (open on Sunday); City of Jordan v. Nicolin, 84 Minn. 367, 87 N. W. 915 (open after hours); State v. Harris,

■ There is no merit to the further claim of appellants that the effect of the resolution is to deprive them of the right to conduct other nonlicensed businesses. The sale of nonintoxicating malt liquors has always been subject to public control. The license to sell such beverages is not a property right but is in the nature of a privilege, and, as such, subject to reasonable regulations. Abeln v. City of Shakopee, 224 Minn. 262, 28 N. W. (2d) 642.[6] The disadvantage of most "privileges" is that to obtain them one must give up certain "rights." The simple result in this case is that to enjoy the profits of this type of business, one must make certain concessions, among them the possibility of being restricted in the use of the premises on which such sale is licensed. Appellants are still free to engage in other activities without restriction at another location. See cases collected in Annotation, 139 A. L. R. 756.

Some of appellants' contentions that the community is inconvenienced by the restrictions on other activities of the licensee appear to have some weight, but such arguments relate to the *advisability* of the restriction not to the *legality* of it and should be addressed to legislative authorities rather than to the courts. It is for the legislature to decide whether the burdens of such a restriction on the community outweigh the benefits.[7]

■ Appellants further contend that the exception of incorporated cities and villages from the provision establishes an invalid classification. A legislative classification founded upon any reasonable

---

50 Minn. 128, 52 N. W. 387 (open on Sunday); State v. O'Connor, 58 Minn. 193, 59 N. W. 999 (open at prohibited times); City of Duluth v. Abrahamson, 96 Minn. 39, 104 N. W. 682 (open on Sunday); City of St. Paul v. St. Aubin, 201 Minn. 208, 275 N. W. 623 (open after hours). See, Annotation, 29 A. L. R. 407.

[6]See, *e. g.*, City of St. Paul v. Troyer, 3 Minn. 200 (291); In re Wilson, 32 Minn. 145, 19 N. W. 723 (restricted to certain areas); State v. Scatena, 84 Minn. 281, 87 N. W. 764 (requiring sworn information on details of business); State v. Barge, 82 Minn. 256, 84 N. W. 911, 1116, 53 L. R. A. 428 (enclosures on premises forbidden).

[7]State v. Eckert, 74 Minn. 385, 77 N. W. 294, wherein a Minnesota statute, establishing closing requirements, makes specific exception for hotels.

basis should be sustained. State v. Pehrson, 205 Minn. 573, 287 N. W. 313, 123 A. L. R. 1045. In the case of liquor regulations, classification of areas on the basis of the amount of police supervision in the areas is common. See, In re Wilson, 32 Minn. 145, 19 N. W. 723; State v. Kantler, 33 Minn. 69, 21 N. W. 856. A liquor regulation which establishes a classification on the basis of the difference in police supervision between rural and urban areas is founded on a reasonable basis. See, United States ex rel. Hover v. Ronan (C. C.) 33 F. 117; State v. Kennedy, 343 Mo. 786, 123 S. W. (2d) 118.

Order affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.