STATE v. JACK KUSS.

84 N. W. (2d) 290.

July 12, 1957—No. 37,092.

*Maslon, Kaplan, Edelman, Joseph & Borman,* for appellant.

*Charles A. Sawyer,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for respondent.

KNUTSON, JUSTICE.

This is an appeal from a conviction of a violation of the Minneapolis "Non-intoxicating Malt Liquor" ordinance,[1] which as far as material here reads:

"* * * It shall be unlawful to furnish free any food or drink at the premises described in the license."

Defendant was employed as a bartender in the "Huddle Bar" in Minneapolis. The Huddle Bar was the holder of a license to sell non-intoxicating malt liquor (hereinafter called "beer") under the above ordinance and also held a license to sell intoxicating liquor under the

---

[1]Minneapolis City Charter and Ordinances (Perm. ed.) 15:9-3(a).

"Intoxicating Liquors" ordinance.[2] Section 3 of that ordinance contains, among other things, the following provision:

"* * * No 'On-Sale' liquor license, as the term is herein defined, shall be granted to any applicant who has not at the time of making said application an unrevoked license issued by the City of Minneapolis for the 'On-Sale' of non-intoxicating malt liquor, as said term is defined by a certain ordinance entitled, 'An ordinance relating to the use and sale of non-intoxicating malt liquor,' as amended, passed October 23, 1936, providing that if the said applicant, coincident with his application for an 'On-Sale' liquor license had made application and paid the fee for a non-intoxicating malt liquor license, and the same has been granted by the City Council or is granted coincident with the granting of the application for an 'On-Sale' liquor license, said 'On-Sale' liquor license may be granted."

The facts upon which the conviction rests are not in dispute. On August 10, 1956, John Madson, a Minneapolis police officer, dressed in civilian clothes, came to the Huddle Bar about 7:30 p.m., where he was served by defendant. Madson ordered a drink of Calvert whiskey and sour, which was served in a 3/4-ounce "shot" glass, and a taller 4-ounce mix glass. Madson paid 35 cents in coin for the first drink. He thereafter ordered a second drink, which was served like the first except for the addition of a little soda in the mix, and he again paid 35 cents in coin. He thereafter ordered a third drink and handed defendant a dollar bill. Simultaneously with accepting the dollar bill, defendant poured whiskey into two 3/4-ounce "shot" glasses and set them both before Madson. He gave Madson back 65 cents in change, consisting of a half dollar, a dime, and a nickel. Madson put down the 50-cent piece on the bar and said: "Here." Defendant pushed it back to him and said: "Huh uh." At that point another officer came into the bar and arrested defendant.

Defendant was taken to police headquarters and was interrogated by Officer James Jahr. Jahr testified that defendant stated to him that he had served Madson all the drinks he had in the Huddle Bar; that he served him four drinks, for which he said he charged for three; and

---

[2]Minneapolis City Charter and Ordinances (Perm. ed.) 15:1.

that the fourth drink and third drink were ordered at the same time but he could not recall whether he charged for the fourth drink or not. He further testified that defendant was asked if it was a policy to set up any free liquor or food in the place and that he (defendant) "said that he had no direct orders on this but it was more the discretion of the bartender," and that on occasions he had set drinks up for customers.

Defendant did not take the stand or offer any evidence of any kind. On the testimony of the two police officers the court found defendant guilty and imposed a fine or, in the alternative, a jail sentence.

Defendant on this appeal contends: (1) That the evidence does not show that a free drink was furnished by defendant; (2) that the non-intoxicating malt liquor ordinance does not apply to the sale of intoxicating liquor; (3) that the ordinance is so vague, indefinite, and uncertain that it is void; (4) that the ordinance is unreasonable, burdensome, unfair, and discriminatory; and (5) that the ordinance is void because it unnecessarily prohibits the giving away of harmless drink or food by any person at the licensed premises, whether the gift be by licensee or customer.

■ Defendant first contends that the evidence fails to establish that a free drink was furnished. He claims that the last two drinks were furnished for the price of one; hence that there was no free drink. The only evidence in the case which is not in any way controverted is that Madson ordered the first drink and paid 35 cents for it. That concluded the first transaction. He ordered a second drink and likewise paid 35 cents for it. In similar fashion, that concluded that transaction. He next ordered the third drink, not two drinks as defendant would have us believe, and was charged the same as he had paid for the first two drinks. But, instead of the drink he ordered, he received two drinks in separate "shot" glasses. He offered to pay for the fourth drink, but such payment was declined by defendant. It should require little ingenuity, under these circumstances, for anyone to conclude that the fourth drink was furnished free. The evidence amply sustains the court's finding to that effect.

■ The provision under which defendant was convicted is not found in the ordinance relating to "On-Sale" licenses to sell intoxicating liquor but is found, instead, in the ordinance dealing with licenses to sell non-

intoxicating malt liquor, which will be referred to hereinafter as "beer." Defendant contends that, inasmuch as the act involved the sale of intoxicating liquor, the provision of the beer ordinance has no application. In order to hold an "On-Sale" intoxicating liquor license, the licensee is required to also have a beer license. It is reasonable to assume that the city saw no necessity for repeating the prohibition in both ordinances, for the reason that under the beer license a licensee would not be permitted to give away intoxicating liquor any more than he could give away beer. The proscription in the beer ordinance is not limited to giving away beer. Nor are the two licenses so disconnected that it must be held that the provisions of one do not apply to the sale or gift under the other. The only reasonable explanation for the requirement that the holder of an "On-Sale" intoxicating liquor license must also hold a beer license is that it was intended that the proscription in the beer-license ordinance should apply to all places where liquor, whether denominated intoxicating or nonintoxicating, should be sold. It would require a strange construction of this ordinance were we to hold that, under the circumstances of this case, a holder of both licenses could give away intoxicating liquor but could not give away beer. We hold that the proscription contained in the beer-license ordinance applies to giving away intoxicating liquor as well as giving away beer.

■ Defendant next contends that the ordinance, literally construed, would prohibit giving away a glass of water, milk, or other harmless beverage. We think that the term "drink," in the ordinary parlance of users of intoxicating liquor or 3.2 beer, has another connotation than water, milk, or pop. This case does not involve the act of giving away these harmless commodities. When a case comes before us which does involve such action, it will be time enough to consider whether such act is within the meaning of the ordinance. The ordinance is not so vague or uncertain as to be void. Anyone dealing with the sale of intoxicating liquor or 3.2 beer could easily determine that giving away a drink of whiskey was proscribed by the ordinance. We need go no further here.

■ Nor is the ordinance so unreasonable, burdensome, unfair, or discriminatory as to be void on constitutional or other grounds. The regulation of the sale of intoxicating liquor has always been considered

a subject peculiarly within the police powers of a municipality.[3] The same is true of the sale of so-called nonintoxicating malt liquor.[4]

■ The burden of proving that an ordinance is unreasonable or that it transcends the municipality's police power rests on the party asserting its invalidity.[5]

■ One who accepts a license to sell 3.2 beer or intoxicating liquor accepts the privilege of so doing subject to the burdens imposed upon the privilege by an ordinance enacted in the exercise of the police power of the municipality granting the license.[6]

■ Finally, defendant contends that the ordinance is unconstitutional because it unnecessarily prohibits the giving away of harmless drink and foods at the licensed premises by any person, whether licensee or customer. We do not think that the ordinance can be so construed. It is aimed at those who are to exercise the license. What we have said above applies with equal force to this contention.

Nor does the absence of a prohibition from giving away other things such as free pencils, souvenirs, matches, and like products place the ordinance outside the permissible limits of the exercise of the city's police power. In all probability, the city could prohibit giving away gifts such as these as an inducement to the purchase of beer or intoxicating liquor if it saw fit to do so. The mere fact that it prohibits giving away only free food or drink does not invalidate the ordinance as long as the prohibition bears a reasonable relationship to the evil it is aimed to prevent. In Abeln v. City of Shakopee, 224 Minn. 262, 267, 28 N. W. (2d) 642, 645, we said:

"* * * If such regulation by any reasonable inference aids in the regulation of the liquor traffic, it is a legitimate, and not an arbitrary or capricious, exercise of that [police] power."

---

[3]City of Duluth v. Cerveny, 218 Minn. 511, 16 N. W. (2d) 779; Anderson v. City of St. Paul, 226 Minn. 186, 32 N. W. (2d) 538; Cleveland v. County of Rice, 238 Minn. 180, 56 N. W. (2d) 641.

[4]Abeln v. City of Shakopee, 224 Minn. 262, 28 N. W. (2d) 642; see, Recent Cases, 32 Minn. L. Rev. 306.

[5]City of St. Paul v. Clark, 194 Minn. 183, 259 N. W. 824; City of St. Paul v. Dalsin, 245 Minn. 325, 71 N. W. (2d) 855.

[6]Cleveland v. County of Rice, 238 Minn. 180, 56 N. W. (2d) 641.

The dissent contends that there was a sale of four drinks for the price of three; hence that there was no gift as all drinks were paid for. No one else makes such claim. Not even defendant claims there was a sale of four drinks for the price of three. Defendant claims that he sold the first two drinks for 35 cents and the last two drinks for the price of one. Apparently the dissent does not agree with defendant but proceeds on a theory defendant either has not thought of or did not believe he could sustain.

Neither do we see any merit in the contention of the dissent that selling a whole meal at a single price instead of selling it in separate items has any similarity to the present case. In the first place, regulations governing the sale of food stand on a different footing in the exercise of a municipality's police power than the regulation of the sale of intoxicating liquor or beer. In the second place, a whole meal is sold as a single item or package, much like buying a whole bottle of whiskey, and usually includes the main course and all the trimmings for a single price. If a patron of a restaurant ordered a first course such as soup and paid for it; then ordered a main course such as meat and potatoes and paid for it; and then ordered a dessert and paid for it, all according to a la carte prices, and thereafter was served an after-dinner drink for which he made no payment, it could hardly be said that the after-dinner drink was not furnished free. Whether furnishing pretzels, potato chips, and peanuts with the sale of beer is a violation of this ordinance we need not now determine. It is clear that furnishing a free drink of whiskey is within the meaning of the ordinance, and that is all that is involved here.

Affirmed.

THOMAS GALLAGER, JUSTICE (dissenting).

On August 10, 1956, defendant was employed as a bartender at the "Huddle Bar" in Minneapolis which was properly licensed. On that date, John Madson, a Minneapolis police officer, dressed in civilian clothes, was served a 3/4-ounce drink of Calvert whiskey, for which he paid 35 cents. He then ordered, and was served, a second 3/4-ounce drink of the same liquor for which he likewise paid 35 cents. Thereafter, he ordered a third drink and handed defendant a dollar bill. As defendant picked up this bill, he simultaneously filled two

3/4-ounce glasses and set them before Madson. After ringing up the sale on the cash register, he returned Madson 65 cents change from the dollar bill and refused Madson's offer to pay more. Thereupon, James Jahr, a fellow police officer, came in and arrested defendant for the violation charged. Madson did not consume the fourth drink.

It is defendant's contention that the transaction described constituted a sale for a valuable consideration and not a gift; that when four drinks were provided for the price of three, all four were supported by the total consideration paid; that had not this consideration been paid, the fourth drink would not have been forthcoming.

The distinction between a sale and a gift is that the former is supported by a valuable consideration while the latter is not. Suske v. Straka, 229 Minn. 408, 39 N. W. (2d) 745; Roske v. Ilykanyics, 232 Minn. 383, 45 N. W. (2d) 769; 24 Am. Jur., Gifts, §§ 11 and 12. In transactions similar to that involved here, it is generally held that, if a transfer of property is contingent upon a consideration of some sort, such transfer cannot be defined as a gift. Thus, when "free" lottery tickets are delivered to a customer purchasing a ticket to a motion picture such delivery is supported by consideration and is not a gift; see, Albert Lea Amusement Corp. v. Hanson, 231 Minn. 401, 43 N. W. (2d) 249; State v. Stern, 201 Minn. 139, 275 N. W. 626; Commonwealth v. Wall, 295 Mass. 70, 3 N. E. (2d) 28; or where "free" books were given in return for a promise to purchase other books at standard prices. Book-of-the-Month Club, Inc. v. Federal Trade Comm. (2 Cir.) 202 F. (2d) 486; cf. Federal Trade Comm. v. Standard Education Society, 302 U. S. 112, 58 S. Ct. 113, 82 L. ed. 141. The majority fails completely to recognize or give effect to these common-law distinctions between "gifts" and "tie-in" sales supported by the consideration which covers the sale of other articles of property.

Applying these principles here, it would seem clear that the fourth drink, had it been accepted, would not have been furnished free, but rather as a part of an entire transaction wherein four drinks were sold at a price equivalent to the price of three. If the total amount paid by Madson in the sum of $1.05 had been advertised as the established price for four drinks, could it be said that the fourth drink here was furnished free, even though the established price of a single drink was

35 cents? If full effect is given the principles expressed in the majority opinion, it will mean that many of the ordinary practices of operators licensed under the 3.2 beer and hard liquor ordinances will be violative thereof. By its terms, the ordinance here involved prohibits the furnishing of free food as well as free drinks. Thus, under the construction applied by the majority, the customary practice of such an operator in providing pretzels, potato chips, or peanuts upon the bar for the free use of customers, or furnishing a tray of appetizers or hors d'oeuvres without extra charge when a complete dinner has been ordered, would subject him to prosecution under the ordinance. I cannot ascribe to the Minneapolis City Council by implication an intent to render unlawful such harmless and well-established customs. If it meant that the word "free" as used in the ordinance should prohibit transactions, which, under the well-established common-law principles above referred to, did not fall within the classification of "gifts," then definite language to such effect should have been included in the ordinance.

The majority suggests that the dissent is based upon a defense not asserted by defendant; that the issue raised by him is not whether four drinks were sold for the price of three, but rather whether two drinks were sold for the price of one. From a legal viewpoint, it is difficult to understand what difference this would make insofar as the applicable principles are concerned. It is clear from the record that the price paid for the first three drinks was considered sufficient to cover a fourth drink; and that an extra drink would not have been forthcoming if but one drink had been furnished before, since no additional drink was offered following the sale of the first one.

In any event, in his statement of the issues, defendant raised the question: "Did defendant furnish free a drink in violation of the Minneapolis 3.2 beer ordinance?" In his assignment of errors, he asserts that "The court erred in holding that defendant furnished a free drink in violation of the Minneapolis 3.2 beer ordinance." In his argument and authorities, he contends: "On the undisputed facts, this prosecution must fail because the record clearly shows that no free drink was furnished. The evidence shows that when Madson ordered a third drink he gave Kuss a dollar bill and Kuss simultaneously poured liquor into two 3/4 ounce shot glasses." How then can it be said, as the ma-

jority suggests, that the dissent proceeds upon a theory different than that relied upon by defendant?