# DR. ROBERT B. BURNS v. DR. ROBERT D. DECKER AND OTHERS.

212 N. W. 2d 886.

November 16, 1973—No. 44138.

*Whitney E. Tarutis,* for appellant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, *Theodore N. May,* Special Assistant Attorney General, and *Phillip D. Nelson,* Special Counsel to the Attorney General, for respondents.

Heard before Knutson, C. J., and Kelly, Todd, and Scott, JJ., and considered en banc.

SCOTT, JUSTICE.

Plaintiff appeals from a summary judgment of the district court. We affirm.

Plaintiff, Dr. Robert B. Burns, was initially employed by the Minnesota State College Board on a nontenured basis in the summer of 1967. He subsequently acted as an assistant professor of education at Bemidji State College for a period beginning September 16, 1968.

At a meeting on December 6, 1968, plaintiff was informed that his contract would not be renewed for the ensuing year, and on December 8, 1968, he wrote a letter of intention to resign. Plaintiff remained on the payroll however. On March 21, 1969, defendant Robert D. Decker, president of Bemidji State College, sent plaintiff a letter stating that as of March 24, 1969, his services would be terminated for alleged cause as a result of his record at the college and his conduct at a meeting on March 20, 1969.

During the following months, plaintiff repeatedly requested the State College Board to modify its decision and to inform him of the precise reasons for the dismissal. The board refused to do so. The plaintiff then requested a hearing before the board and was informed in writing on May 13, 1969, by Stanley P. Wagner, a representative of the board:

"* * * Since your request was not made within the required time period, we have no authority to provide you a hearing on your dismissal."

On December 23, 1970, the parties entered into a settlement agreement, the essential terms including the following:

"In consideration of the promises made in this Agreement, the College and Board hereby withdraw the dismissal for cause proceedings by which Burns' employment was terminated in the spring of 1969, and Burns hereby withdraws his appeals and demands which resulted from that dismissal for cause."

Plaintiff signed the agreement, but as a basis for this action con-

tends that he did so under the false representation set forth in Recital No. 5 of the agreement:

"5. By letter dated May 13, 1969, Burns was notified that he had not requested a hearing within ten days after notification of the reasons for his dismissal as required by Board rules."

He thereafter attempted to rescind his signature by returning, uncashed, the $1,800 settlement check that also constituted his salary for the remainder of the 1968-1969 school year.

Approximately one year later, on January 31, 1972, plaintiff again requested in writing the reasons for his dismissal and this request was also refused. He then commenced this action.

Plaintiff contends that this action is governed by the pertinent rule of the Minnesota State College Board, Minn. Reg. SCB 17(b)(1, 2) (1965). Minn. Reg. SCB 17(b)(2) provides in part:

"Dismissal of Non-Tenure Faculty. Until unclassified personnel achieve tenure as hereinafter provided, such personnel shall be deemed to be in a probationary period of employment, and any annual contract may or may not be renewed as the State College Board may deem fit, provided however such unclassified personnel may be discharged for cause during any contract period upon written notice to such person. If such person requests reasons for dismissal for cause, the State College Board shall give their reason in writing within ten days after receiving such request. Such person, within ten days after receiving such written reason, may make a written request for a hearing before the State College Board, which shall be provided. Termination shall occur at such time as determined by the Board after completion of such hearing if requested. If no hearing has been requested, termination shall occur as provided in the resolution previously adopted. These provisions shall not affect the powers of the State College Board to dismiss under any other provisions provided by law."

After reading the entire record and hearing the oral arguments, this court still does not know why plaintiff was originally

discharged. It therefore seems clear that the State College Board did not comply with the above rule, which required the board, upon request of a discharged nontenure faculty member, to give "reasons for dismissal" in writing. Under any reasonable interpretation of that requirement, such reasons should be given in such detail as to leave no doubt in the minds of those concerned of the "cause" for the termination of the annual contract. Failing in this, the board was also derelict in not providing a hearing. The "ten days" limitation mentioned in this rule does not begin to run until such "reasons" are given.

Substantial issues have been recently raised with regard to the employment rights of public employees and of teachers, both tenured and nontenured. Viewing Minn. Reg. SCB 17(b)(2) with the various principles established in Olson v. Regents of University of Minnesota, 301 F. Supp. 1356 (D. Minn. 1969), and Board of Regents v. Roth, 408 U. S. 564, 92 S. Ct. 2701, 33 L. ed. 2d 548 (1972), we can only conclude that under the standards of those cases due process rights may be violated by failure to provide a hearing upon request.

It should further be noted that Minn. Reg. SCB 17(b)(2) has now established a complete and thorough procedure to be followed in the dismissal of a nontenured teacher. The complaining party should be fully informed of the available rules of procedure, and if he requests that they be utilized, compliance by the board with those rules is necessary for protection of the dismissed party's rights.

This failure to comply with Minn. Reg. SCB 17(b)(2) was undoubtedly recognized by the board and provided the basis for its agreeing to the settlement under which the plaintiff was made financially whole, receiving what he would have been paid in salary if the discharge had never occurred.

The main issue, then, for our consideration is whether the settlement agreement entered into by the parties is complete and therefore prevents the application of this State College Board rule.

The lower court found that the settlement made on December 23, 1970, was a mutually executed and binding release and that, thereby, both parties have released any right to claims they may have had arising out of plaintiff's dismissal. We also must conclude that the existence of a valid settlement agreement between these parties as to these particular rights must control. This court has held in Gronquist v. Olson, 242 Minn. 119, 125, 64 N. W. 2d 159, 163:

"A release has been defined as a relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists, to the person against whom it might have been enforced. 76 C.J.S., Release, § 1. A release may, dependent upon its terms, have the effect of extinguishing a right of action, and if so, it may be pleaded as a defense to any suit on the action."

The facts before us indicate and the agreement specifies that the tendered $1,800 was to satisfy "any and all rights and claims," and the only contingency to be satisfied, before the agreement became binding, was the approval of other public officials. This contingency was met. Consequently, we must find the settlement agreement conclusive evidence that the alleged wrong has been satisfied. We therefore have an obligation to prohibit any further action by plaintiff.

Plaintiff further claims that even though he did execute the agreement, he subsequently became aware of the alleged misrepresentations of defendants. To allow this contention would be to frustrate the very purpose for which these agreements are executed. It appears from plaintiff's deposition of March 23, 1972, that he completely understood both the scope and ramifications of the proposed contract at the time of its execution:

"Q.  * * *  Were you aware that in this agreement you gave up certain claims, and rights that you might have otherwise had against the State College system? I'm talking about at the time you signed it, now?

"A. Well, I felt at the time that it was bringing it to a conclusion, I hoped it was.

"Q. And you understood, as part of this conclusion, that you were to receive the amount of one thousand eight hundred dollars—

"A. Yes.

"Q. —as settlement, and you understood that was a settlement award?

"A. It wasn't what was reasonable, but—

"Q. But, you did understand that that was what it was for?

"A. Yes.

"Q. Did you receive a check from the State of Minnesota in that amount, at some time subsequent to this agreement?

"A. Yes, I did."

Since we are here dealing with well-educated individuals, and the deposition indicates complete comprehension, plaintiff is precluded from now claiming misrepresentation and misunderstanding. Summary judgment was properly granted under Rule 56.03, Rules of Civil Procedure.[1]

We, therefore, affirm the ruling of the trial court with instructions to the defendants to again tender the $1,800 settlement check to the plaintiff.

Affirmed.

MR. JUSTICE MACLAUGHLIN took no part in the consideration or decision of this case.

---

[1] "* * * Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law. * * *"