**Gary D. FLESNER, d/b/a Gary's Place/North Orleans Restaurant**

v.

**CITY OF ELY, a municipal corporation.**

**Civ. No. 5–93–CV–14.**

United States District Court,
D. Minnesota,
Fifth Division.

Aug. 31, 1994.

Kenneth David Butler, Clure Eaton Butler Michelson Ferguson & Person, Duluth, MN, for plaintiff.

George Carlton Hoff, Paula Ann Callies, Hoff Barry & Kuderer, Eden Prairie, MN, for defendant.

## ORDER

ROSENBAUM, District Judge.

Based upon the April 6, 1994, Findings of Fact, Conclusions of Law, and Recommendation issued by United States Magistrate Judge Raymond L. Erickson, the files and records herein, and no objections having been filed, the Court adopts the magistrate's

Recommendation in all respects. Accordingly, IT IS ORDERED that:

Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION

### April 6, 1994

ERICKSON, United States Magistrate Judge.

#### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(B), upon the Defendant's Motion for Summary Judgment.

The Plaintiff has appeared by Kenneth D. Butler and Philip S. Eckman, Esqs., and the Defendant has appeared by George C. Hoff, Esq.

For reasons which follow, we recommend that the Defendant's Motion for Summary Judgment be granted.

#### II. *Factual Background*

By this action, the Plaintiff seeks redress, pursuant to Title 42 U.S.C. § 1983,[1] for asserted violations of his rights to due process and to the equal protection of the laws, as those rights have been secured by the Fourteenth Amendment to the United States Constitution. Specifically, the Plaintiff contends that these rights were infringed when the City of Ely refused, without benefit of a predeprivation Hearing, to renew[2] his liquor licenses upon their expiration on August 31, 1992. The licenses in question had terms of one-year in duration.

In summarizing the evidence which is pertinent to the parties respective claims, we note, preliminarily, that the facts are not seriously in dispute. In 1989, while the Plaintiff was visiting his mother, who was then residing in Ely, Minnesota, he decided to relocate to the area and to start a commercial venture. He purchased a vacant structure in which he planned to operate a night club in one portion of the building, and an arcade in another. The Plaintiff's plan was to obtain a liquor license for the night club, but to leave the arcade open to all ages.

After he had made extensive repairs and improvements to the building, and following his securing of the requisite corporate license and vendor permits, the arcade was opened in 1990. A few months thereafter, the Plaintiff opened a restaurant, which he was proceeding to develop into a night club. At that point, following the establishment of both business pursuits, the Plaintiff first inquired of the City Clerk about the availability of a liquor license for his restaurant. When he was told that two licenses were available, he filed an application with the City for one of them. Shortly thereafter, the application was denied upon a vote of the City Council.

Following this rejection of his application, the Plaintiff retained legal counsel and commenced a legal proceeding against the City in the State District Court to challenge the

---

1. Section 1983 provides as relevant herein:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *

2. During the course of oral argument, the Plaintiff suggested that the City's failure to renew his licenses was, in reality, a "revocation" which would activate the Hearing requirements of Minnesota Statutes Section 340.415. While inventive, the characterization of the City's action is unimportant to our analysis. Without dispute, the Plaintiff's liquor licenses expired on August 31, 1992, and his legal right to operate his business, premised upon the legal validity of those licenses, was not impaired until the licenses expired pursuant to their own terms. Apart from the Plaintiff's conclusory argument, there is nothing in the record before us which would legitimately transform a decision not to renew *expiring* licenses into a revocation of *existing* licenses. No where has the Plaintiff asserted a claim for monetary damages arising from losses purportedly sustained prior to August 31, 1992—the last effective day of the licenses in question. Accordingly, we do not pursue any further discussion of the Plaintiff's misplaced "revocation" argument.

City's denial of his requested liquor license. His legal challenge was unsuccessful, and it was at that time that the Plaintiff individually approached City Councilmember Forsman and Mayor Salerno to explore the potential means by which he could secure a license. In these negotiations, the Plaintiff initiated a proposal of restricting the license, so as to impose conditions which might make licensure of his restaurant more agreeable to the City.[3]

On December 4, 1990, the Plaintiff submitted a proposal, in the form of an "Official Request and Ballot," for the issuance of a liquor license with specially formulated restrictions, that he authored. On February 14, 1991, the Plaintiff submitted a second proposed ballot, which contained the following restrictions:

Condition # 1: There will be no standing up or sit down bar in the building.

Condition # 2: All drinks will be served by a waitress or waiter.

Condition # 3: Dinner dances will be held for individuals over 21 years of age.

Condition # 4: A 11 p.m. lockout will be in effect throughout the entire year. However, clientele will not have to leave the establishment after the lockout until the closing time of 1 a.m.

On February 21, 1991, the Ely City Council recommended the issuance of a restricted liquor license, subject to the above conditions, and subject to review by the City Attorney. The Council determined that any violation of these conditions would result in a revocation of the license. On March 18, 1991, the Ely Liquor Commission approved the issuance of the license, the Plaintiff accepted the license as promulgated, and expressed no disagreement with the four referenced conditions. He surrendered the licenses that had been issued previously, and began selling all alcoholic beverages under the authorization provided by the new on-sale liquor license. On April 2, 1991, a companion Sunday license was issued, which contained the very same restrictions.

On August 14, 1991, the Plaintiff's liquor licenses were renewed for the period from September 1, 1991 to August 31, 1992. Once, again, the licenses were restricted by the same four conditions.

In late 1991, Ely police became concerned when they discovered that, while the Plaintiff was locking his doors at 11:00 p.m. as he was required to do, he was also refusing admittance to his premises to law enforcement authorities. Law enforcement's request for a key to those premises was refused, and the Plaintiff received verbal warnings from Councilman Forsman that, if he did not "follow the rules," his liquor licenses could be suspended or revoked.

Thereafter, in early 1992, the Plaintiff pleaded guilty to a misdemeanor charge after a minor was served alcohol at the Plaintiff's place of business. As a consequence of this conviction, the Ely Liquor Commission suspended the Plaintiff's license for a period of three days. Apparently, due to a "mess-up" as to when the suspension was to commence, the Plaintiff actually closed his business for nearly a week.

On July 14, 1992, the Ely Liquor Commission held a meeting at which the Plaintiff's restricted license was reviewed, as well as the "manner in which compliance has or has not taken place." *Eckman Affidavit, Exhibit A.* The Commission decided to write a letter to the Plaintiff, which informed him that the "spirit" of the restricted license had been violated. On July 21, 1992, the Liquor Commission again corresponded with the Plaintiff, and advised him as follows:

It has come to our attention that basically you are not conducting a supper club or restaurant at which meals are accompanied by drinks, but rather a bar which occasionally serves food. * * * In reality not all drinks are served by waitresses or waiters. Food has become a secondary item * * * and you are primarily holding the business out as a bar. This violates not only the technical restrictions but also the spirit of the circumstances under which this license was granted * * *. From here on out * * * the character of the establishment must be that of a restaurant primarily and not, in any way, a bar.

---

**3.** During this period, the Plaintiff was successful in securing the issuance of an On–Sale, Non–Intoxicating Malt Liquor License and a Wine License, both of which were granted on August 13, 1990, and were approved on September 10, 1990. See, *Minnesota Statutes Section 340A.403.*

The Plaintiff was warned that correction of the violations was required within 15 days or the Commission would consider disciplinary action.

On August 4, 1992, the Ely City Council considered the renewal of all the existing liquor licenses. A motion to approve the renewal of all licenses—except for those held by the Plaintiff—was carried unanimously. Following further discussion, which focused upon the suspected violations of the restrictive conditions of the Plaintiff's license, the Council voted to table the renewal of that license until each Councilmember had the opportunity of visiting Gary's Place in person.

The Plaintiff was present at the Council meeting of August 4, 1992, but he "wasn't exactly sure" what was meant by the decision to table the renewal vote. He knew, however, that his license had to be renewed prior to August 31, 1992.

On August 18, 1992, the Council voted not to renew the Plaintiff's liquor license "being that it [was] unenforceable." *Hoff Affidavit, Exhibit H.* The Plaintiff did not attend this meeting, because of a recommendation by Ely City Attorney Bill Defenbaugh ("Defenbaugh"), that the Plaintiff's mother, who would make a more favorable impression, appear in his stead. The Plaintiff became aware of the Council's decision to deny his request for renewed licensure because of the reports of his mother and others, and because he obtained a copy of the minutes of the Council's meeting on the very next day.

On August 31, 1992, the Plaintiff's license expired. On September 1, 1992, the Plaintiff received a letter from the City Clerk, which notified him that the Council had determined that he had not complied with the special restrictions of his license and, as a result, a motion not to renew the license was passed. The letter also stated:

> However, if you feel that this determination is improper or that any form of due process has not been met the council will afford you a hearing on the matter either before the council as a whole or an independent entity, as agreed upon by both the council and yourself. If you wish to have such a hearing, please notify the city clerk's office within the next ten (10) days
> * * *.

Upon receiving this letter, and realizing that his license had expired, the Plaintiff closed his business in order that the City could not charge him with selling liquor without a license. His business remained closed for approximately two months.

As noted, the Plaintiff's present cause of action is for damages that purportedly arose from the City's failure to provide him with a predeprivation Hearing, prior to August 31, 1992, in violation of his due process rights. Accordingly, our analysis necessarily focuses on the "deprivation" which is alleged to have occurred on or before August 31, 1992.[4]

### III. *Discussion*

In support of his Section 1983 claim, the Plaintiff alleges a constitutional deprivation that arose from the City's nonrenewal of his

---

**4.** As we note in the text of this Opinion, the Plaintiff's claim is limited to the City's failure to renew his license, and to a recovery of the damages which were occasioned by that nonrenewal decision. As a consequence, the occurrences which transpired, after the expiration of the Plaintiff's licenses on August 31, 1992, are extraneous to our analysis. Nevertheless, we recite those post-expiration events in the interests of completeness.

On October 29, 1992, the City Council agreed to renew the Plaintiff's licenses, pending the conduct of a post-deprivation Hearing. For reasons unknown, the scheduling of that Hearing was postponed on one or more occasions at the instance of one or the other party. As it turns out, before that Hearing was convened, the Council "passed a motion revoking [the Plaintiff's] license subject to [his] rights for a hearing." *Hoff Affidavit, Exhibit S.* Apparently, the revocation was prompted by a report from the City's Liquor Commission, and by certain police reports, which intimated that the Plaintiff was continuing to violate the restrictions of his licensure. A revocation Hearing was scheduled to be convened on February 1, 1993.

The Hearing actually commenced before an Administrative Law Judge ("ALJ"), on February 11, 1993. Following the close of that Hearing, the ALJ issued a decision, on April 5, 1993, which concluded that the City failed to prove, by a preponderance of the evidence, that the restrictions of the Plaintiff's liquor licenses had been violated. As a consequence, the ALJ recommended that the City dismiss the revocation proceedings, and that no further adverse action be taken. In this respect, the ALJ was influenced by her conclusion that the restrictions in the Plaintiff's licenses were vague. Accordingly, the ALJ

restricted liquor licenses, which were allowed to expire on August 31, 1992. Specifically, the Plaintiff alleges that the nonrenewal deprived him of a property[5] interest without the due process of law to which he was entitled under the Fourteenth Amendment to the United States Constitution.[6] The Plaintiff has also alleged that his liquor licenses were arbitrary and capricious as applied, in violation of his Fourteenth Amendment rights to due process and to the equal protection of the laws.

 In response, the City has moved for Summary Judgment, arguing that the Plaintiff is barred from any recovery by his settlement of his claims against the City at the time he paid for the renewal of his liquor licenses on October 29, 1992. Further, the City contends that it is entitled to a Judgment because the Plaintiff was not deprived of a "property interest" which is entitled to constitutional protection.[7] Lastly, the City claims that the Plaintiff's contention, that the terms and conditions of his liquor licenses were "arbitrary and capricious," fails as a matter of law. We address each of these issues in turn.[8]

### A. Are the Plaintiff's Claims Barred by the Plaintiff's Alleged Release?

In addressing the Defendant's contention, that the Plaintiff's Section 1983 claim is pre-

---

also recommended that the parties negotiate more objectively definitive standards for the Plaintiff's operation under a restricted license, which would avail both parties with a fair opportunity to determine the extent of the Plaintiff's compliance. The City claims that the Plaintiff has refused to negotiate on license conditions.

Notably, the ALJ's decision is silent on the issues of license nonrenewal which presently confront us, and the Plaintiff's Complaint is silent as to any claims which might have arisen from the City's decision to revoke his license in January of 1993.

**5.** The Due Process Clause of the Fourteenth Amendment extends protection to life, liberty and property interests. For understandable reasons, the parties have addressed the Plaintiff's claim in the context of a "property interest." While it is true that the Plaintiff's Complaint does allege, in broadly conclusory language, that the "reputation of his business was tarnished," we find no basis to conclude that such a claim rises to a "liberty interest."

In *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976), the Court concluded that the defamatory statements of a state actor, no matter how seriously they may have harmed the grievant's reputation, did not deprive the grievant of any "liberty" or "property" interests that were protected by the Due Process Clause. See also, *DeCamp v. Douglas County Franklin Grand Jury*, 978 F.2d 1047, 1049 (8th Cir.1992), cert. denied, ⸺ U.S. ⸺, 113 S.Ct. 3036, 125 L.Ed.2d 723 (1993); *Nelson v. City of McGehee*, 876 F.2d 56, 58 (8th Cir. 1989). Unlike the circumstances in the *Paul* case, here the Plaintiff does not allege any damage to his own personal reputation, just some oblique reference to a deprecation of a business interest.

Similarly, while the Plaintiff appears to contend that the denial of his license renewal deprived him of business profits, the fact remains that he was free to utilize his business premises for other purposes or to seek a liquor license in some other community. Paraphrasing the Court in *Board of Regents v. Roth*, 408 U.S. 564, 575, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), it stretches the concept too far to suggest that a person is deprived of "liberty" simply because his license to pursue one business is denied but he remains free to pursue others, or the same business in another community.

Given the record before us, the Plaintiff has failed to demonstrate either a factual or legal basis which would support any contention that his interests in either "life" or "liberty" were either placed in contest by his Complaint, or would preclude the entry of Judgment as a matter of law.

**6.** The Plaintiff also claims a violation of his rights under the Minnesota Constitution. We are aware of no authority, nor has the Plaintiff provided any, where the Minnesota Courts have interpreted the Minnesota Constitution to provide broader due process rights than what are guaranteed by the United States Constitution. Thus, the Plaintiff's claim that the Minnesota Constitution has been violated is subsumed by our Fourteenth Amendment analysis.

**7.** In the alternative, the Defendant argues that, irrespective of the Plaintiff's purported "property interests," he received all of the process to which he was due. Given our determination that the Plaintiff did not have a constitutionally protected property interest in a renewal of his liquor licenses, we do not address this alternative argument further.

**8.** We briefly review our standard of review where, as here, we are confronted with a Motion for Summary Judgment.

Summary Judgment is neither an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury to weigh the evidence and to render credibility determinations. *Celotex Corp. v. Ca-*

cluded by a purported release that he tacitly entered upon his acceptance of his renewed licenses in October of 1992, we note that, after he was notified of the City's nonrenewal decision, he retained legal counsel to assist in challenging that decision and in renegotiating his licenses. On September 8, 1992, his counsel requested a Hearing, in the hopes of resolving the matter informally, but the Hearing was scheduled and then delayed. On October 6, 1992, the parties discussed a resolution of the matter, during which the Plaintiff proposed to resolve the dispute by his acceptance of a free, one-year liquor license, in exchange for the City's assumption of his electricity bill. The proposal was rejected by the City Council.

On October 19, 1992, the Plaintiff submitted another settlement proposal, this time without the assistance of counsel. For a cash payment of $18,000 and the restoration of his liquor license, the Plaintiff agreed to take certain beer signs out of his front windows, and to "take pictures of food and drink prep area." This proposal was also rejected by the City Council on October 26, 1992. The minutes of the Council meeting on that date do report, however, as follows:

> trett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A Summary Judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rule 56, Federal Rules of Civil Procedure.* For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a verdict for the non-moving party. See, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986) ("An issue of material fact is genuine if it has a real basis in the record.").
>
> Here, although each of the parties has filed affidavits for the Court's review, we find no genuine issue of material fact which proscribes the entry of Judgment as a matter of law. Rather, we regard the issues before us as warranting a summary disposition in favor of the City because the Plaintiff has failed "to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."

Moved by Forsman supported by Theno, that although there may have been a possible gap in the hearing process, the council feels they have met due process, there will be no cash settlement given Gary Flesner, restricted liquor license will be renewed at this time although the council feels that the given restrictions had not been complied with, and that a hearing be set up with an independent examiner, to be scheduled as soon as possible.

*Hoff Affidavit, Exhibit O.*

Thereafter, on October 29, 1992, the City Clerk wrote the following to the Plaintiff:

> To reiterate: after the closed meeting discussion regarding your offer to settle your claim against the City of Ely, the City made the offer to you which is contained in the motion, a copy of which is attached. You may wish to make a counter offer or reject the offer all together and proceed as you see fit. * * * Please let us know what your position is and if you are requesting a hearing within the next ten (10) days.

*Hoff Affidavit, Exhibit P.*

The Plaintiff immediately paid for and obtained his liquor license, and he reopened for business, including the sale of alcoholic beverages.[9]

> *Celotex Corp. v. Catrett,* supra, 477 U.S. at 322, 106 S.Ct. at 2552. In such a case, no genuine issue of material fact will be found to exist because "a complete failure of proof concerning an essential element of [that party's] case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552. "In determining whether a material factual dispute exists, the court views the evidence through the prism of the controlling legal standard." *Nebraska v. Wyoming,* — U.S. —, —, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993). If reasonable minds could differ as to the import of the evidence, however, Summary Judgment should not be granted and, in exercising its function, the Court is not to weigh the evidence. *Anderson v. Liberty Lobby, Inc.,* supra, 477 U.S. at 250–51, 106 S.Ct. at 2511–12; *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987).

9. On November 5, 1992, the City Clerk again contacted the Plaintiff, advising that the Plaintiff's payment of his license fee reflected an acceptance of the City's offer, and suggesting that he call within 10 days to arrange the date of the Hearing before the independent examiner, in order to avoid the City's unilateral selection of a Hearing date. No response was made other than

■ Given these facts, the Defendant argues that the circumstances are clear that the Plaintiff requested money damages and a renewal of his licenses, and that the "City made a counteroffer which was accepted by the actions of the Plaintiff." *Defendant's Memorandum,* at 11. We disagree.

■ A release has been defined as a relinquishment, the concession or the waiver of a right, claim or privilege by the person in whom it exists to the person against whom it might have been enforced. See, *Balderrama v. Milbank Mut. Ins. Co.,* 324 N.W.2d 355, 356 (Minn.1982); *Danelski v. King,* 314 N.W.2d 818 (Minn.1981); *Burns v. Decker,* 298 Minn. 7, 212 N.W.2d 886, 889 (1973), cert. denied, 416 U.S. 991, 94 S.Ct. 2401, 40 L.Ed.2d 770 (1974). Since releases are contracts, normal principles of contract law apply to their formation. Vagueness or indefiniteness may cloud the formation of a contract, and a release, like any other contract, must be the result of an offer which is sufficiently definite to permit a reviewing Court to fix the terms of the parties' respective obligations. *Continental Cas. Co. v. Knowlton,* 305 Minn. 201, 232 N.W.2d 789, 794 (Minn.1975); *Holt v. Swenson,* 252 Minn. 510, 90 N.W.2d 724 (Minn.1958); *In re Estate of London,* 218 Minn. 349, 16 N.W.2d 186 (1944). Here the purported release is wholly imprecise, leaving no basis to conclude, as a matter of law, that the Plaintiff's payment of a license fee was intended by him, or understood by the City, as a full waiver of his Section 1983 claim against the City. Absent from the correspondence that the parties exchanged is any reference to a "release of claims," a "waiver of a cause of action," or language of any similar intent. Under the laws of the State of Minnesota, it is well-settled that, before a plaintiff can be compelled to surrender his claim for relief against a wrongdoer, it must be shown that he has intentionally surrendered his claim, or that he has received full compensation for his claim. See, *Couillard v. Charles T. Miller Hosp.,* 253 Minn. 418, 92 N.W.2d 96, 102 (1958). We do not suggest that the City may not adequately demonstrate that the Plaintiff

settled and released his claim, we merely hold that, on the record before us, any such showing, quintessentially, involves a Jury issue. Accordingly, the City's Motion for Summary Judgment on this ground should be denied.

B. *Did the City's Refusal to Renew the Plaintiff's Liquor Licenses, Without the Conduct of a Hearing Prior to the Date of Their Expiration, Deny the Plaintiff Due Process of Law?*

1. *Standard of Review.* "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). What constitutes a "property interest"—deserving of constitutional protection—has been something of a vexatious question. Nevertheless, in a pair of companion cases, that were decided in 1972, the Supreme Court took pains to explore the full meaning of a "property" interest which is protected by procedural due process. In *Board of Regents v. Roth,* supra, the plaintiff sued his employer, a state university, claiming that his employer's refusal to renew his one-year term of employment was a denial of a constitutionally sheltered property interest. In discussing the attributes of such a property interest, the Supreme Court explained:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are

a letter, which was transmitted to the City by the Plaintiff's current legal counsel, which suggested

the potentiality of a civil suit, and which urged an amicable resolution of the matter.

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id.* 408 U.S. at 577, 92 S.Ct. at 2709.

In applying these guidelines to the circumstances in *Roth,* the Court noted that neither the laws governing the plaintiff's employment with the university, nor the terms of his contractual relationship with that employer, provided for a "renewal" of his contract after his existing one-year contract expired. As such, the Court concluded that the plaintiff "did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." *Id.* at 578, 92 S.Ct. at 2710 [emphasis in original].

On the same day that *Roth* was issued, the Supreme Court decided the similar—but distinctly disparate—circumstances of *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). There, the plaintiff was also a nontenured professor at a state junior college whose one-year contract was not renewed. Unlike its determination in *Roth,* the Court concluded that the plaintiff had alleged a property interest, deserving of constitutional protection, because his employer had guidelines and "binding understandings" which implicated a right to contract renewal. In reliance upon *Roth,* the Court restated the attributes of a property interest, which is worthy of constitutional protection, as follows:

> We have made clear in Roth * * *, that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." * * * A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Id.* at 601, 92 S.Ct. at 2699 [citations omitted].

Notably, "[a]lthough the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft,* supra, 436 U.S. at 9, 98 S.Ct. at 1560; see also, *Lucas v. South Carolina Coastal Council,* —— U.S. ——, ——, 112 S.Ct. 2886, 2901, 120 L.Ed.2d 798 (1992) (*Roth* now the "traditional" approach).

■ B. *Legal Analysis.* Necessarily, in evaluating the Plaintiff's entitlement to a renewal of his liquor licenses, we look to the laws of the State of Minnesota, together with any "existing rules" or "mutually explicit understandings," which support his claim for such a benefit. *Memphis Light, Gas & Water Div. v. Craft,* supra, 436 U.S. at 9, 98 S.Ct. at 1560. In this evaluatory process, "to determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake." *Board of Regents v. Roth,* supra, 408 U.S. at 570–71, 92 S.Ct. at 2705–06 [emphasis in original]. Given these parameters, we conclude that the Plaintiff's interest in a license renewal does not rise to the level of a "legitimate claim of entitlement" protected by the Due Process Clause. *Memphis Light, Gas & Water Div. v. Craft,* supra, 436 U.S. at 9, 98 S.Ct. at 1560.

■ Our conclusion in this respect is impelled by the wealth of authority which holds that no one has an absolute right to engage in the sale of liquor and, more particularly, that a liquor licensee has no right to a renewal of his liquor license. See, *Hymanson v. City of St. Paul,* 329 N.W.2d 324, 326 n. 1 (Minn.1983); *Country Liquors, Inc. v. City Council of Minneapolis,* 264 N.W.2d 821, 826 (Minn.1978); *Sabes v. City of Minneapolis,* 265 Minn. 166, 171, 120 N.W.2d 871 (1963); *Paron v. City of Shakopee,* 226 Minn. 222, 228–30, 32 N.W.2d 603 (1948). Without attempting to be exhaustive, we note that a liquor licensee's entitlement to a renewal of his or her license was squarely addressed in *Paron v. City of Shakopee,* supra at 229, 32 N.W.2d 603, and was rejected. The Court reasoned, in part, as follows:

A prior expired license has fulfilled the purpose of its creation and is therefore of no further value or effect. Unless the statute entitles the licensee to a renewal upon compliance with certain conditions, such an expired license confers no rights upon the former licensee. There is nothing in the liquor laws of this state upon which the right to renewal can be premised.

*Id.* at 229, 32 N.W.2d 603.

The holding in *Paron*, that a license confers upon the licensee the right to engage in the licensed business only for the term specified in the license, and without any right to a renewal, unless provided by statute, has not wavered in over 46 years. Nor, for that matter, has the statutory law of the State of Minnesota, which has and does not, either expressly or impliedly, confer any right upon a liquor licensee to a renewal of a license after its expiration. See, *Minnesota Statutes Section* 340A.412, Subdivision 2.[10]

We are mindful of the Plaintiff's urging that we reject these Minnesota authorities for the reason that they largely predate the *Roth* and *Sindermann* analyses and that, accordingly, they should not be viewed as dispositive of the Plaintiff's constitutional right to a due process Hearing. While, in part, the Plaintiff's argument rings true, we find that it unconvincing for several reasons. First, with the exception of *Country Liquors, Inc. v. City Council of Minneapolis*, supra, we have not discovered any published decision which addresses the reasoning of *Roth* or *Sindermann* in a liquor license context. This, however, is of little moment, for the focus of the State Law—which *Roth* and *Sindermann* examine—is not whether the State treats a given claim for benefits as being of constitutional proportions, but whether, under the pertinent State Law,

there is an entitlement to such a claim for benefits. The distinction is telling.

More importantly, the Minnesota Supreme Court did analyze a licensee's claim, for the transfer of a liquor license, under the prism of *Roth* and *Sindermann*, and found no entitlement to the transfer under State Law and, therefore, under "federal constitutional law." *Memphis Light, Gas & Water Div. v. Craft*, supra, 436 U.S. at 9, 98 S.Ct. at 1560. In *Country Liquors, Inc. v. City Council of Minneapolis*, supra, the plaintiff had purchased an existing—but inactive—off-sale liquor license. The license had attached to a commercial outlet that had been condemned and removed in order to permit the construction of a roadway. The plaintiff requested a transfer of that license to a different commercial establishment but, despite the fact that the location for the transfer complied with all applicable zoning and related regulations, the transfer was refused by the City. Following a thorough examination under the principles of *Roth* and *Sindermann*, the Minnesota Supreme Court concluded that the license holders were not constitutionally entitled to a transfer of the liquor license. As the Court explained:

> In view of the Roth decision, we hold that appellants had neither a liberty nor property interest in the dormant license they purchased and sought to have transferred.
>
> \* \* \* \* \* \*
>
> [U]nder Minnesota law there is no property right in a liquor license. This court has repeatedly stated that "no person has a vested property right to engage in or continue to engage in the liquor business." *Arens v. Village of Rogers*, 240 Minn. 386, 401, 61 N.W.2d 508, 519 (1953), appeal dismissed, 347 U.S. 949, 74 S.Ct. 680, 98 L.Ed. 1096 (1954). See, also, *Federal Distillers, Inc. v. State*, 304 Minn. 28, 229

---

10. We think the statutory laws of the State of Minnesota present a telling dichotomy. Although the State Statutes require the conduct of a Hearing prior to the time that any revocation or suspension of a license should take effect, *Minnesota Statutes Section* 340A.415, there is no similar requirement prior to a decision not to renew. Indeed, the State Statutes make clear that, prior to the renewal of an existing liquor license, the governing body may conduct an in-

vestigation if that body deems it in the public interest. From this contrasting treatment of the rights of current and past license holders, we draw the distinction, which has been drawn by the Courts before us: to revoke an existing liquor license involves the impairment of existing rights of licensure, while the refusal to renew has no impact, whatsoever, on the validity of the license which has expired, i.e., which has, in legal effect, served its intended purpose.

N.W.2d 144 (1975); *Sabes v. City of Minneapolis,* 265 Minn. 166, 120 N.W.2d 871 (1963); *Anderson v. City of St. Paul,* 226 Minn. 186, 32 N.W.2d 538 (1948); *Paron v. City of Shakopee,* supra; *Abein v. City of Shakopee,* 224 Minn. 262, 28 N.W.2d 642 (1947). Thus, whether or not a tacit property right in an existing license could be identified for due process purposes (see, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 [1972] ), it is plain that appellants cannot be said to have possessed such an interest in their inactive off-sale license.

*Id.* at 826.

Similarly, it should certainly follow that the Plaintiff here, who held no more than an expired *and* inactive liquor license, cannot be said to have a right to a renewed license that is identifiable for due process purposes. Contrary to the Plaintiff's assertion, therefore, the Minnesota Supreme Court has reaffirmed the absence of a property interest, of constitutional dimensions, in the State's treatment of a liquor license under circumstances which closely parallel those presented here.[11]

■ Lastly, looking beyond the broad boundaries of the State Laws and Regulations, we find no "existing rules," no contractual or quasi-contractual guarantees, and no "mutually explicit understandings," which support the Plaintiff's claim to a license renewal.[12] We understand that, following the expiration of the Plaintiff's liquor license, the City did extend an opportunity for a Hearing to be conducted. We are uncertain of the purpose for the Hearing, whether it was intended to permit a further negotiation of the parties' differences, or had some other useful purpose. We are certain, however, that the offering of such a Hearing, after the expiration of the Plaintiff's liquor license, could not—without a more objectively precise intendment by the City to renew his license—be construed as imbuing his claim for a license renewal with a "property interest" stature. In this respect, we share the view expressed in *Roth* that our recommended disposition of this matter does not reflect any view on our part that a Hearing would not be appropriate or wise, when a City decides to deny a request for a liquor license renewal. *Board of Regents v. Roth,* supra, 408 U.S. at 578–79, 92 S.Ct. at 2710. Rather, the only issue before us is whether such a Hearing is constitutionally required, and we conclude that it is not.[13] Having failed to establish a

---

11. Accordingly, we decline the Plaintiff's invitation that we adopt the reasoning and holdings of various foreign jurisdictions which, in the Plaintiff's view, have adhered to the teachings of *Roth* and *Sindermann.* Our review confirms that the analysis in those cases has been driven by State Laws which are distinctly different from those of our own. See, e.g., *Bundo v. City of Walled Lake,* 395 Mich. 679, 693, 238 N.W.2d 154, 160 (1976).

12. In *Roth,* the Court summarized the absence of any independent source of a property right status to Roth's request to be rehired, as follows:

Thus, the terms of [Roth's] appointment secured absolutely no interest in re-employment for the next year. They supported absolutely no possible claim of entitlement to re-employment. Nor, significantly, was there any state statute or University rule or policy that secured his interest in re-employment or that created any legitimate claim to it. In these circumstances, the respondent surely had an abstract concern in being rehired, but he did not have a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment.

*Board of Regents v. Roth,* supra, 408 U.S. at 578, 92 S.Ct. at 2710.

Modifying this summary, in order to substitute the renewal of the Plaintiff's liquor license for Roth's interest in a rehiring, we believe that the foregoing summary has equal application to the Plaintiff's license renewal claim.

13. Our view in this respect is not altered by the Minnesota Supreme Court's observation in *Tamarac Inn, Inc. v. City of Long Lake,* 310 N.W.2d 474, 477 (Minn.1981), that "[a]dministrative agencies and other licensing bodies have generally established a renewal process which results in license renewal as a matter of course." Notwithstanding this observation, the Minnesota Courts have not recognized a common law right to a liquor license renewal, nor any right to a Hearing or a statement of reasons, should a licensee's request for renewal be denied. See, *Perry v. Sindermann,* supra, 408 U.S. at 602, 92 S.Ct. at 2700; *Board of Regents v. Roth,* supra, 408 U.S. at 578 n. 16, 92 S.Ct. at 2710 n. 16. While such a "matter of course" approach to licensure renewal might have given the Plaintiff some "unilateral expectation" of renewal, that is not sufficient. *Id.* at 577, 92 S.Ct. at 2709. Indeed, given the City's rejection of his original license application, which resulted in his unsuccessful State Court suit, the special restrictions that the Plaintiff proposed in order to ameliorate the

necessary element of his claim—namely the existence and deprivation of a property interest—the Plaintiff's claim must fail.

### C. Did the Restrictions Contained in the Plaintiff's Liquor Licenses Deny Him the Equal Protection of the Laws?

■ In his Complaint, the Plaintiff has alleged a cause of action for a violation of substantive Due Process and Equal Protection, and has asserted that:

> The restrictions placed on the Plaintiff's license were imprecise and capricious as applied. None of the other licensed establishments operating within the City of Ely are andated [sic] by such restrictions. The City Council showed no reason why the Plaintiff was treated in this disparate and unequitable manner.

The Defendant has argued for Summary Judgment on this Count, and the Plaintiff, while opposing Summary Judgment on the Due Process claims, deferred his arguments in opposition to the entry of Summary Judgment on his equal protection Count. We briefly address the issue.

The equal protection guarantees of the Fourteenth Amendment do not give "license for courts to judge the wisdom, fairness, or logic of legislative choices [for,] in areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any rational basis for the classification." *F.C.C. v. Beach Communications*, —— U.S. ——, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993); see also, *Sullivan v. Stroop*, 496 U.S. 478, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990). Here, the Plaintiff alleges differential treatment in that restrictions were placed upon his license, while other license holders in Ely were free of the same limitations.

Nevertheless, the Plaintiff has not shown a lack of a rational basis for the City's differential treatment. For its part, the City has offered the following reasons for its decision to require the Plaintiff to submit to the restrictions of his license:

> In this case, the City was interested in having a liquor establishment with certain restrictions which would cause the establishment to be more of a "supper club." There was discussion between the City and the Plaintiff trying to arrive at conditions which could achieve that goal. The conditions [were] designed to avoid simply having another bar in the City with a predominance of liquor sales * * *

*Defendant's Memorandum*, at 11–12.

The decision to require the Plaintiff to submit to license restrictions is rationally related to the legitimate end of keeping another bar out of the City limits. We conclude that the restrictions contained in the Plaintiff's licenses were a proper exercise of the City's broad, discretionary authority to regulate the issuance of liquor licenses in a manner which is consistent with the public interest of its citizens. If the City does not violate a statutory or constitutional proscription in that exercise, the citizens of Ely have ready recourse to the election—if not the lobbying—process, so as to cure any perceived errors in the City Council's legislative function. Under a rational-basis standard of review, "[w]here, as here, there are plausible reasons" for the actions of the City, "our analysis is at an end." *United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980).

Moreover, insofar as the Plaintiff has complained of the "vagueness" and unenforceability of the restrictions imposed, we simply observe that the evidence clearly identifies the original source of these restrictions to be the Plaintiff. Further, it was the Plaintiff who actively sought the renewal of the very licenses he now regards as indefinitely vague. Given those circumstances, we fail to understand how any constitutional basis, for the Plaintiff's claim of entitlement for damages on that score, is present for our review. Accordingly, finding no legal basis for the Plaintiff's equal protection claim, that re-

City's concern about his vending of liquors, and the suspension of his license on account of his service of a minor patron, substantial doubt is

cast upon the reasonableness of his expectation of renewal, whether unilateral or not.

quest for compensatory relief is also unavailing as a matter of law.

WHEREFORE, It is—

RECOMMENDED:

That the Defendant's Motion for Summary Judgment [Docket No. 21] be granted.

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D.Minn. LR1.1(f), and D.Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than April 19, 1994, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than April 19, 1994,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.